A. & J. DENNISTOUN *v.* JOHN RIST et al.

Plaintiffs sued on a promissory note; and on motion of their counsel, it was ordered "that judgment be rendered against plaintiffs as in case of nonsuit." *Held:* that this was a voluntary discontinuance of plaintiffs' suit under Article 3485 of the Civil Code, and therefore the interruption of prescription from having instituted the suit, shall be considered as never having happened, although it appeared probable from the record that the discontinuance was made with the view of reviving the suit under more favorable auspices.

C. C. 3484, 3485.

APPEAL from the District Court of East Feliciana, *Sterling*, J.

*John McVea & W. D. Winter*, for plaintiff:

We submit that a judgment of nonsuit, even when voluntarily taken, is neither a discontinuance nor an abandonment. A discontinuance is a matter entirely within the discretion of tha party. C. P. 491, 492. The court can have no control over it. 3 L. R. 282. 6 Rob. 354. 14 L. R. 280. 1 Rob. 393. 17 L. R. 316. The whole range of authorities go to show that the discontinuance is a matter entirely within the discretion of the party, and with which the court can have nothing to do. A motion for a nonsuit, on the contrary, is addressed entirely to the court, and derives the whole of its validity from the action of the court.

If the court concur with a party on a motion for a nonsuit, a judgment of nonsuit is rendered; if the court do not concur with the party, he cannot go out of Court on such a motion, however willing he may be to do so. It is not so with a discontinuance. Hence, we conclude that a nonsuit is altogether distinct from a discontinuance, the one being simply the act of the party, .the other the act of the court after hearing the case, or upon an examination of the pleadings. Nor does it invalidate the argument to insist that a judgment of nonsuit, voluntarily rendered, is equivalent to a discontinuance, as contemplated by Article 3485. A judgment of nonsuit voluntarily taken, is only a judgment of nonsuit rendered by the court, with the consent of the party, to enable him to renew his action in another form, on different allegations, or after he shall have supplied himself with additional means of proof.

This certainly is no abandonment or discontinuance of his demand within the meaning of Article 3485. If the suit had been brought before a court of incompetent jurisdiction, such a suit, according to Article 3484, would interrupt prescription, because it plainly showed an intention on the part of the plaintiff to pursue his demand, and not to abandon it. Now, in what way did plaintiffs show any intention to abandon their demand? Under the decisions of the old court, and until a late date, the peremptory exception filed by plaintiffs in the first suit was well taken. Plaintiff's counsel viewing it in this light, (it matters not if he was in error,) in order to preserve the rights of his clients, and to enable him to provide himself with the means of establishing the claim and proving the demand at the elected domicil, the absence of which was alleged by defendants, asked the court to render a judgment of nonsuit instead of a judgment absolutely discharging the defendants. But says the defendant, this cannot avail you, because you then had in your possession the protest showing the demand. This fact does not appear in the record—and if it did, how could it alter the case? It is apparent that the party had no intention to abandon his demand—and if proof of his intention were wanting, we have it in the fact that he renewed his suit at the very next term of the court. We doubt if a judgment of nonsuit is ever rendered in any other manner than was the one before the court. The plaintiff, finding that an exception is well taken, or that his proof has failed, to avoid an absolute judgment against him, asks the court to make the judgment as of nonsuit, that he may begin again—and the court, to enable him to do this, and believing the justice of the case will thus be met, renders it in this form. It is by no means of unfrequent occurrence that a party plaintiff against whom an absolute judgment has been rendered, asks the Supreme Court on appeal to make the judgment as of non-

suit, and the court to meet the equities of the case, grants his prayer. Can it be contended that judgments taken in this manner on motion of the plaintiff do not interrupt prescription ?

*Muse & Merrick,* for defendant and appellant.

CAMPBELL, J. (VOORHIES, J., and BUCHANAN, J., absent.) The appellants rely on their plea of prescription. The note sued on, matured in January, 1841. An action was brought in 1845, which terminated in November of that year, by a judgment in these words : " On motion of *McVea,* of counsel for plaintiffs, it is orderd," etc., " that judgment be rendered against the plaintiffs, as in case of nonsuit, with costs."

The present suit was brought in March, 1846.

The question is, whether plaintiffs lost by their course at the trial of the previous action, the benefit of an interruption of prescription, which they would otherwise unquestionably have had.

The Article 3484, treats of the citation of the *possessor,* as a legal interruption. The benefit of the rule is extended to creditors, by Articles 3516, 3517. It may he assumed then, that the case of the debtor as well as that of the pos·sessor is comprehended by the Article 3485, which says : " If the plaintiff after having made his demand, abandons or discontinues it, the interruption shall be considered as never having happened."

The appellants insist that the judgment as in case of nonsuit, having been rendered on motion of plaintiff's counsel, amounts to a voluntary abandonment or discontinuance of the demand, and therefore, no interruption of prescription has happened.

They have arrived at this conclusion, though with much hesitation.

Although the distinction between a voluntary and involuntary nonsuit, as it exists at common law, is not with us, established in direct terms ; yet it may be fairly inferred and has been frequently recognized by the court ; and we are unable to see any essential difference between a discontinuance as known in our practice and a voluntary nonsuit.

In the case of *Dunn and others* v. *Kenney,* 11 R. 249, prescription was relied upon. It was contended by the plaintiffs as in this case, that the prescription had been interrupted by a previous action. The record of the first suit con-tained the following entry : " This cause came on to-day for trial before a jury, when the plaintiffs having offered no proof in support of their claim, it is adjudged and decreed that judgment of nonsuit be entered against plaintiffs, and that they pay costs of suit." In commenting on this, Judge *Bullard,* says : " If the record had shown that a jury was empannelled, we might have inferred that the nonsuit was voluntary, because the defendant, in cases tried by a jury, has a right to a verdict, unless the plaintiff chose to suffer a nonsuit. But that does not appear in this case."

In the case of *Smith* v. *Gibbon,* 6 Ann. 684, plaintiff having instituted suit to recover a tract of land, at the trial took a voluntary nonsuit, and subse-quently renewed his suit. It was held by the court, *Preston,* pronouncing its opinion, that the first suit was voluntarily abandoned and did not interrupt prescription.

Although it is not impossible from the matters appearing on the record that plaintiffs fearing they were not able to make out their case, and that judgment would therefore be rendered in favor of defendants, applied for a nonsuit, not with the intention of abandoning their claim, but on the contrary, with the intention of renewing it under more favorable auspices, still, under the autho-

rity of the cases above cited, we are constrained to regard their act as a volun-tary discontinuance in the sense of Article 3485, of the Civil Code.

It is therefore adjudged and decreed, that the judgment of the District Court be reversed and annulled, and that there be judgment in favor of the defendants. The costs of both courts to be paid by plaintiffs and appellees.

*E. Briggs*, for a rehearing:

We are induced to ask a rehearing in this case for two reasons, apart from our believing the court to be in error in the decision they have rendered: 1st. Because the court confesses it arrives at the conclusion with much hesitation: 2d. Because the reconsideration of the subject will entail but very little labor.

The question is of considerable importance as it affects practice, and likely to work much injury in the form in which it is at present solved, and we shall endeavor to show that the authorities are against this solution. Art. 3484 is but the transcript of Art. 2244 of the Code Napoleon, which says: "Une citation en justice, un commandement ou une saisie, signifiés à celui qu'on veut empêcher de prescrire, forment l'interruption civile; and Art. 2246, La citation en justice, donnée même devant un juge incompétent, interrompt la prescription." Art. 3485 is 2247 of the Code Napoleon, which says: "Si l'assignation est nulle par défaut de forme,—Si le demandeur se désiste de sa demande,—S'il laisse périmer l'instance,—Ou si sa demande est rejetée,—L'interruption est regardée comme non avenue."

The latter article in the French Code covers more ground than that in ours, but it contains the provision to which our article is limited.

Before we examine the reason of these articles and exhibit the comments made thereon, we would respectfully state to the court our belief that it is in error in supposing a difference to exist between voluntary and involuntary nonsuits at common law.

Tidd, vol. 2, p. 916, says: When the jury have agreed, they return to the bar; but before they give their verdict, it was formerly usual to *call* or demand the plaintiff, in order to answer the amercement, to which, by the old law, he was liable in case he failed in his suit; and it is now usual to call him whenever he is unable to make out his case, either by reason of his not adducing evidence in support of it, or evidence arising in the proper county; and if it be clear that in point of law the action will not lie, the Judge at Nisi Prius will nonsuit the plaintiff, although the objection appear on the record, and might be taken advantage of by motion in arrest of judgment, or on a writ of error. But where the case turns on a question of fact, it ought to be submitted to the jury, unless the plaintiff's counsel expressly assent to his being nonsuited, a mere *tacit acquiescence* not being, it seems, sufficient.

In Chitty's Practice, vol. 3, p. 910, it is said, "A nonsuit must always be voluntary, that is, by plaintiff's counsel submitting to the same or not appearing; and in no case can it be adverse or without implied consent. *Dewer* v. *Purdy*, 4 Nev. & Man. 633. If the plaintiff's counsel, after hearing the arguments and evidence on both sides, perceives the judge and jury are decided against the plaintiff, or he apprehends from the absence of material evidence that he will, on a future occasion, be able to establish a better case, he usually *elects to be nonsuited*, but if he have no such hope and there is any chance of obtaining a verdict or withdrawal of a juror to divide costs, he does not interfere."

The only sense in which a nonsuit can be said to be given against the assent of the plaintiff, expressed or implied, is where by statute the court is empowered to terminate a cause at the instance of the defendant by rendering judgment 'as of nonsuit.'

The same writer, Chitty, vol. 3, 784, says: The law has provided two modes on behalf of defendants to prevent a plaintiff from keeping actions suspended and untried for any indifinite time, viz: a motion for "a judgment as in case of nonsuit" and a trial by proviso. The former, by Stat. Geo. 2, cap. 17, entitled: "An Act to prevent inconveniences from delay of causes after issue joined, enacting:" that where any issue shall be joined in an action or suit at law, in the superior courts, and the plaintiff shall neglect to bring such issue on to be tried according to the course and practice of said courts, it shall be lawful for the Judge, on motion in open court, after "notice, to give the like judg-

ment for defendant or defendants, as in case of nonsuit," unless for cause further time is allowed, and if such judgment be given, defendant shall have his costs as in nonsuit.

We will now turn to the French Code, and its commentators. Troplong, § 595, in commentating on Art. 2247, with reference to the first clause, quoting the reasons for its adoption, says : " Que lorsque les formalités exigées pour que le possesseur soit valablement assigné, n'ont pas été remplies, il n'y a pas réellement citation, et il ne peut résulter de l'exploit de signification aucun effet."

In paragraph 599, he limits the force of the article to errors in the form of the citation, it does not extend to want of capacity in the party claimant.

With reference to the second, § 602 : Le deuxième cas a lieu lorsque le demandeur se désiste de sa demande ; la justice de cette disposition parle plus haut que tous les commentaires. Il est manifeste que par son désistement, le demandeur reconnait lui-même que sa prétention était mal fondée, et qu'il renonce à se prévaloir de son assignation et de sa demande.

The third we shall pass over, the doctrine being entirely unknown to our practice.

The fourth and last, § 610, is the rejection of the demand. " En effet, le jugement fait le titre du défendeur ou du possesseur. Il retrempe son droit, et une nouvelle prescription ne peut commencer que depuis qu'il est intervenu.

Mais le rejet dont parle l'Art. 2247, n'est pas un rejet provisoire, c'est un rejet définitif, faisant obstacle à ce que la même demande se reproduise entre les mêmes parties et ayant de tout point, la même valeur que si le demandeur s'était désisté de sa demande."

It seems to us clear from the preceding remarks that where prescription has been stayed by the service of citation, though before an incompetent tribunal or by an incompetent party, some act amounting to a relinquishment of his right—" que sa prétension était mal fondée"—must be shown to deprive him of benefit which would otherwise result from this conservatory act.

The causes which invalidate the demand once made under the jurisprudence of the Code Napoleon is : 1st. Defect of form, which, as we have seen, defeats the proceeding upon the ground that citation was never made, and therefore cannot operate. 2d. That he acknowledges his demand unfounded and therefore withdraws it, which is productive of the same effect. 3d. That the demand is judicially rejected by a definitive decree, which, as Troplong observes, settles the question by denying the right and giving title to the party cited. In the second case, the claimant is supposed to relinquish his right, or admits that he claims in error ; in the latter, the court does so for him.

But where, as in the case at issue, the plaintiff makes no such admission, where it is patent to the debtor and to the court that the nonsuit is moved for, not only without such relinquishment, either tacit or express, but with a declared intention to pursue it, it seems going beyond the rationale of the whole doctrine to declare that the same results shall follow. He tells you, fearing that my debtor, from technical difficulties, may evade my claim, which is a just one, and obtain a verdict in his favor, I will consent to a judgment in the form of a nonsuit, that I may obtain such evidence or correct such omissions, and prosecute it without the risk of such a misadventure.

The following is the rationale given by Rogron, Art. 2244 : "Le possesseur appelé à venir se défendre devant la justice, ne peut pas se dispenser sans être de mauvaise foi, et sa possession de ce moment est interrompue civilement, 2446, devant un juge incompétant : Dans ce cas le demandeur, il est vrai, s'est mépris sur le tribunal, mais il n'y en a pas moins assignation en justice, et cette assignation, valable dans la forme, ayant averti le possesseur qu'il était sans droit, l'a constituée en mauvaise foi."

His remarks on 2447 correspond with those of Troplong.

Now surely a suit commenced and prosecuted, but terminated by a decree of the court which is not a definitive judgment, but merely provisional in its nature, by which neither the rights of the plaintiff are concluded, nor the alleged obligation of the defendant discharged, as effectually makes him a debtor in bad faith, as a suit brought before an incompetent tribunal or by one not qualified to stand in judgment. The court dismisses the demand in all three of the supposed cases, and although in fact in the first, it does so on the motion of the plaintiffs' counsel, that motion is coupled with reasons which effectually negative the presumption that the demand has been abandoned.

60

Recantation of the original charge—admission, tacit or express, that the defendant is in good faith, constitutes in all the cases cited in illustration by the French writers, the *reason* why a discontinuance either active or in the case of perimation tacit, should render inoperative the effect of citation when once effectually made, and we again repeat that it is impossible by any construction which can be given to a judgment of nonsuit, even where granted on the plaintiff's motion, to pretend that this admission has been made, or that we have done anything to negative our original allegation to the contrary.

There is a reason for every legal precept, if sufficient trouble be bestowed in tracing it to its source, and we think this a safer mode of construing statutes than by reference to lexicons. The one can hardly lead to error, the other is almost always sure to do so.

In the case of *Smith* v. *Gibbon,* 6 Ann. 684, the first suit was commenced four months from 18th November, 1844, or in March of the following year, but at the time plaintiff took a voluntary nonsuit, and commenced the suit in question on the 25th June, 1846, a year and three months after the judgment in the first, and the court says, "It is to be observed that the first suit does not interrupt prescription *because it was voluntarily abandoned,*" citing 3485—Code.

Rehearing refused.