## No. 9171.

F. A. BLANKS VS. HIBERNIA INSURANCE COMPANY, OF NEW ORLEANS.

Judgments overruling exceptions in the progress of a cause are interlocutory and come up for review on the appeal from the final judgment when properly presented. A separate appeal from them is neither necessary nor desirable when they do not dispose finally of the suit.

The rules of this Court are not mechanical contrivances to entrap suitors and counsel, but well-considered regulations to promote the efficient performance of public duties.

Stipulations in policies of insurance limiting the time within which claims shall be prosecuted are valid and legal, and form the law for the parties.

When, on presentation of a claim for loss, a company positively denies its legal liability, but says that being re-insured for seven-eighths of the loss in other companies, it is willing to pay if the re-insuring companies will also consent; and when the re-insuring companies have not consented; and when all negotiations have ended and the company has absolutely refused to pay nearly two months before the expiration of the period limited in the policy for the prosecution of the claim, such negotiations form no excuse for delay beyond the term, and action brought six months after the expiration is barred under the stipulation.

An open policy insuring the freight lists of steamboats plying the Mississippi and tributaries, upon proper and timely entries thereon, unmistakably means that if by reason of any of the perils insured against, the boat should be prevented from earning the freight stipulated on cargo shipped, the company will make it good to the extent of the insurance. When by reason of such peril the boat is disabled from completing her voyage and is compelled to reship her freight at the same rate which she was to receive, the loss is total and the company liable.

The rule which requires vessels navigating the high seas to repair, if it can be done, and to prosecute the voyage without transferring freight, must submit to reasonable limitations in its application to river-craft, whose voyages are short and whose shippers have the right to require prompt forwarding of their goods in case of detention by accident. Under the circumstances here, the boat was justified in reshipping.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*Singleton, Browne & Choate* for Plaintiff and Appellee.

*T. Gilmore & Sons* and *O. B. Sansum* for Defendant and Appellant:

The several clauses of policies of insurance providing for limitation of action, ascertainment of particular average or partial loss and payment of loss in sixty days, only after proof of interest in the property and proof of loss and adjustment, are intended for the protection of the insurer, and are founded in principle and obligatory upon the assured. Riddleberger vs. Hartford Insurance Company, and citations on first page of brief; 26 A. 298; 35 A. 353; 11 Rob. 255; Arnold on Marine Insurance, 869–874.

The doctrine of one-third new for old when adopted into the agreement of the parties as a measure of compensation in adjusting partial marine losses, cannot be departed from. Riley vs. Ocean Insurance Company, 11 Rob. 255; 4 Ohio, 234; 33 Mo, 158; 2 Philips on Insurance. 477; Arnold on Marine Insurance, 979–986.

In order to recover upon a policy upon freight, it is necessary to prove an insurable interest and loss of freight, as well as a contract to insure. Arnold, 869–874.

## ON MOTION TO DISMISS.

The opinion of the Court was delivered by

MANNING, J.   The grounds of the motion are,

1. That the appeal is taken by motion at a different term than that in which the judgment was rendered.

Certain exceptions had been made which were overruled in June 1883.   The trial on the merits was not had until Feb. 1884, when the appeal was taken.   Of course the appeal brought up the interlocutory judgment of June 1883 on the exceptions.

What the mover means is that we must dismiss the appeal *quoad* the overruling of the exceptions, which he contends is a final judgment because the judge signed it.   The character of legal documents, proceedings, etc., is determined by other insignia than the fact of signature by court officers.

2. That extension of time for filing the transcript was not legally obtained for this reason.   The transcript not being completed by the return day, the appellant on that day made his motion in this court for an extension of thirty days, accompanying it with the usual certificate of the clerk of the lower court, and the time was granted.   Now the appellant wrote that motion on a half-sheet of cap-paper and pasted or attached the lower clerk's certificate to the outside, so that when the two were folded together, the caption of the suit and the filing by our clerk was on the certificate and not actually endorsed on the motion.

The mover says that is not a compliance with our rule that requires the title of the suit to be endorsed upon the motion.

The objection is so puerile that we should have been glad to be spared putting it on record.   The rules of this court are not mechanical contrivances to entrap suitors and counsel, but well-considered regulations to promote the efficient performance of our duties.

The motion is refused.

## ON THE MERITS.

FENNER, J.   This action embraces three claims for distinct losses under three separate policies of insurance on different steamboats.

### I.

The first and most important claim is for $5511 58, alleged loss under a policy upon the steamboat Fred. A. Blanks.

The policy was for $40,000, upon the hull, engine, appurtenances, etc., of the boat, which were valued in the contract at $60,000, and contained the following significant stipulations:

Blanks vs. Insurance Company.

1. That in case of irreparable loss, then to the charges for repairs "the said insurance company will contribute in proportion as the sum insured bears to the agreed value herein."

2. That the company was to be liable only for "net loss after the usual deduction of one-third new for old from the cost of such repairs, or replacing of apparel or furniture, that being the agreed difference in value between new and old materials."

3. That the insurance company shall not be liable for "any claim for provisions furnished to the officers or crew, nor for their wages, when the said steamboat is detained by any disaster, or during subsequent repairs;" nor "for any expense of dockage or hauling out for repairs, or proceeding to a port for repairs; nor for any loss (except in case of general average) unless the necessary repairs required solely by the disaster amount to five *per cent* on the agreed value in this policy, after deducting proceeds of savings, if any, and exclusive of all expenses of ascertaining and proving the same."

4. That all claims under this policy are barred, unless prosecuted within one year from the date of loss."

The loss claimed occurred on August 20, 1881, resulting from raking the bottom of the boat, breaking a number of her floor timbers and otherwise injuring her. She was able, however, to make her way to New Orleans, where she arrived on August 26th, and after protest made, went into dock for repairs.

After their completion, plaintiff presented his claim for loss to the company, accompanied by the protest and by vouchers for the items of the claim.

This claim stated the total cost of repairs at $3698 32, which included, however, a charge of $1236 for *dockage* and demurrage. From this $3698 32 the claim deducted one-third new for old, leaving $2465 55 as the claim for repairs. It added thereto $217 "for fuel and oil consumed in running pumps after discharge of cargo and until boat was put in dock;" $193 32 for engineer's services running pumps; $120 "Capt. F. A. Blank's services superintending repairs;" and $17 to "notary for extending protest, certified copy, etc.;" so that the claim made against the company was for $3035.

Upon presentation of this claim to the company, and at various times afterwards, interviews took place between the officers of the company and the plaintiff and other persons in his interest, touching which there is a large amount of evidence in the record. We think it unnecessary to analyze this evidence. We simply state the perfect conviction pro-

duced thereby on our minds, that from the first, and at all times, the company positively disclaimed any legal liability for the loss, on the ground that, excluding charges manifestly improper under the terms of the policy, the loss did not amount "to five per cent on the agreed value in the policy."

We have no concern here with the question as to whether the legal position assumed by the company was a sound one or not. It is sufficient to say that the company placed its refusal to pay upon a distinct and unequivocal denial of its legal liability.

Upon the complaint of plaintiff as to the hardness of the case, and in consideration of the fact that it had reinsured in seven other companies to the extent of $35,000, or seven-eighths of the entire risk, the company told plaintiff that if the reinsuring companies would agree to waive the objection and pay the loss, it would do so; and promised to communicate with them on the subject.

Such communications were made, informing the reinsuring companies, or at least some of them or their resident agent, of the facts, and of the defendant's willingness to pay if they would; and no answer was made or notice taken thereof by said companies.

So matters went on until June 28, 1882, when the company demanded of plaintiff payment of a premium due on the renewed insurance of the boat. Then plaintiff demanded a settlement of the loss and a credit thereof on the new premium, which the company refused and absolutely declined to settle the loss.

This occurred nearly two months before the expiration of the "one year from the date of loss," within which the policy required that the claim should be prosecuted, under penalty of being barred. Yet suit was not brought until February 19, 1883, nearly eighteen months after date of loss.

The validity and legality of stipulations in policies of insurance limiting the time within which actions for claims thereunder may be brought, have been affirmed by this Court and by the Supreme Court of the United States. Edson vs. Merchants' Insurance Company, 35 La. A; Riddleberger vs. Insurance Company, 7 Wall. 386.

It has also been settled by this Court that the term "prosecuted," as here used, means prosecuted *by suit*. Carraway vs. Insurance Company, 26 A. 298.

Such stipulations are, therefore, the law which the parties have made for themselves, and by which their rights and obligations must be measured.

Courts have been liberal in construing and administering such provisions, have restricted their application in sundry cases, and have admitted certain excuses for non-compliance therewith; but, after attentive research, we can find no reason or precedent which would justify the failure of plaintiff to sue within the time limited in this case.

Thus, it has been held that where the action could not be brought within the time by reason of the defendant's not being accessible to service of process at a time immediately preceding the expiration of the time, the non-compliance would be excused. Semmes vs. Insurance Company, 13 Wall. 159; Insurance Company vs. Hall, 12 Mich. 202.

So, where the policy contained other conditions, compliance with which was inconsistent with suit within the time fixed, the failure will not defeat the action. Mayor vs. Insurance Company, 10 Bosw. (N. Y.) 537; Stout vs. Insurance Company, 12 Iowa, 371.

So, delays occasioned by the conduct of the insurer, as by promises to pay, or failure to act in adjusting the loss, or acts inducing defendant to suspend the making out of his proofs of loss, in such manner as to prevent the insured from bringing his action, or other negotiations which fairly warranted and induced delay beyond the period stipulated, have been held to operate a waiver of the limitation.

The cases chiefly relied on by plaintiff's counsel will be found to fall within the above categories.

Thus, in Killips vs. Insurance Company (Sup. Ct. Wisconsin) 1 Ins. L. J., 169, the acts and omissions of defendant's agent had delayed the plaintiff in furnishing his proofs of loss, which, under the terms of the policy were a condition precedent to his right of action, and it was held that as the limitation could only apply from the time the right of action accrued, such delay did not count in the time; following in this the decision in Mayor vs. Insurance Company, 39 N. Y. 45.

No such point is involved in this case. The proofs of loss were furnished on October 14, 1881. No objections were made to them. Plaintiff's right of action accrued sixty days thereafter, and the suit was not brought within one year even from that date. So that even if we admit the very strained doctrine of these cases, that a provision requiring suit "within twelve months from *date of loss*" means "within twelve months from the expiration of the period fixed in the policy as the delay allowed the company for paying, after proof of loss," it would not avail in the present case.

The other authorities relied on will be found to cover cases where the promises and inducements to delay of the company were continued

beyond the period of the limitation in such manner that, after they ceased to operate, the suit could not be brought within the delay.

But here, even conceding that the negotiations were entitled to any effect whatever, they ceased, as conclusively proved, about two months before the expiration of the limitation. The mere pendency of the negotiations between the parties on subject of settlement will not of themselves operate as a waiver of the limitation, unless they are of a character to induce the insured to abstain from suit within the time. McFarland vs. Insurance Company, 6 West Va. 425; Woodson Fire Insurance, sec. 434.

In a case strikingly similar to this, it was held in New York that refusal to pay, on the very ground here asserted, did not operate a waiver of the limitation clause. Degrove vs. Insurance Company, 61 N. Y. 594.

We are of opinion, however, that the conduct here proved was entitled to no such effect, under any circumstances. The company's denial of its legal liability and refusal to pay under the policy, were prompt, decisive and reiterated. The expression of a willingness to pay if the reinsuring companies would agree, was a mere proposition of benevolence. If plaintiff intended to stand upon his legal rights, his course was clear and open. If he chose to take the chance of the consent of the reinsuring companies to pay, notwithstanding the absolute denial of legal liability, his delay on that account cannot avail him, or prejudice the company.

We conclude, therefore, that the plea in bar was well taken and that the allowance of this claim was error.

## II.

The other two claims present less difficulty. The proof as to their amount satisfied the judge who tried the case and we shall not disturb the finding.

The legal defenses are without merit. The claims are based on an open policy insuring one-half the freight lists of the boats. The accidents which occasioned the losses were within the risk. The meaning of the policy is unmistakable. That is, that if by reason of any of the perils insured against, the insured should be prevented from earning the freight stipulated on cargo shipped on board, the company should make it good to the extent of one-half its amount.

Here, the amounts of the freight lists were duly entered on the policy, after the cargoes had been secured. The boats, while on their respective voyages, met accidents which prevented their completion. In one case an explosion occurred near the city, which compelled the boat

to return and subjected her to a delay of six weeks. She was compelled to employ another boat to forward her cargo and to pay the same rate of freight which she received.

In the other case, the accident was a collision, which disabled the boat from proceeding and compelled her to unload and reship on another boat, which charged the full amount of the freight. The loss of freight, in both cases, was total.

The rule of law which requires the master of a vessel navigating the high seas to repair, if it can be done, and prosecute the voyage, instead of transferring the freight to another vessel, must submit to reasonable limitations in its application to river craft, whose voyages are short, and whose shippers have the right to expect and require that in case of detention from accident, their goods shall not be detained to await lengthy repairs, but should be promptly forwarded to their destination. Roe vs. Crescent Insurance Company, 11 A. 408. Other defenses are without merit.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be amended by reducing the amount thereof to the amount of $671 52, with legal interest on $292 28 from June 8, 1881, and on $379 24 from April 4, 1881, and by rejecting plaintiff's demand in other respects; and, as thus amended, that the same be affirmed; plaintiff and appellee to pay costs of this appeal.

Rehearing refused.