GUCCIONE v. NEW JERSEY INS. CO. OF NEWARK, N. J.*

No. 16205.

Court of Appeal of Louisiana. Orleans.

May 4, 1936.

*Rehearing denied June 1, 1936. Writ of error refused June 30, 1936.

846

Deutsch & Kerrigan & Burke, of New Orleans, for appellant.

Jno. E. Fleury, of Gretna, for appellee.

McCALEB, Judge.

This is a suit for reformation of a fire insurance policy, coupled with a prayer for judgment against the defendant in the sum of $775.75, plus penalties and attorney's fees, as a result of a fire occurring upon the insured property on February 1, 1932.

A brief history of the litigation is pertinent in order to properly dispose of the questions of law involved.

On March 9, 1923, the plaintiff, by notarial act, purchased the property No. 514 Dolhonde street, Gretna, La. The act of sale recites that the plaintiff, a married woman, purchases the property described in the act with her separate and paraphernal funds under her separate administration and control. Plaintiff's husband appears in the act of sale as a party thereto for the purpose of authorizing, aiding, and assisting his wife in making the purchase.

On September 10, 1929, the defendant insurance company issued a policy of fire insurance in the name of plaintiff's husband, by the terms of which it insured the dwelling, No. 514 Dolhonde street, Gretna, La., in the sum of $1,500 against fire for a period of three years. On August 30, 1931, the Allemannia Fire Insurance Company of Pittsburgh issued another policy of fire insurance upon the same dwelling for a term of three years, insuring the said property for the sum of $2,500, this insurance being issued in the name of the plaintiff as owner of the property.

On February 1, 1932, a fire took place at the premises No. 514 Dolhonde street, resulting in considerable damage to the building.

The plaintiff and her husband resided, at the time of the fire, in Los Angeles, Cal., and they executed, in favor of one Julio Guccione, a brother of plaintiff's husband a general power of attorney dated February 18, 1932, authorizing the said Julio Guccione to represent plaintiff and her husband as attorney in fact in the state of Louisiana. Shortly thereafter, Julio Guccione, acting under this power of attorney, made claim against the Allemannia Fire Insurance Company of Pittsburgh and the defendant company upon the two fire insurance policies. The firm of McBryde, Bourne & Kennedy, Inc., insurance adjusters of New

Orleans, was selected by both of the insurance companies to represent them and to adjust the loss. The claim made by Julio Guccione against the defendant company was refused adjustment by the adjusters upon the ground that said claim was made in the name of plaintiff's husband as owner of the property insured and that the title of the property was vested not in plaintiff's husband, but in the plaintiff. It was further stated by the adjusters that the claim was excessive.

The claim made against the Allemannia Fire Insurance Company of Pittsburgh was adjusted, the loss being determined by appraisers selected by the parties to be the sum of $2,068.67. The portion of the loss to be borne by the Allemannia Fire Insurance Company was $1,292.92, and this amount was paid by that insurance company to the plaintiff, who accepted the same without prejudice to her right to file suit for the balance of $775.75.

On October 4, 1932, the plaintiff and her husband filed suit against the defendant company in the Twenty-Fourth judicial district court for the parish of Jefferson for $775.75, plus penalties and attorney's fees, seeking a reformation of the policy contract and alleging in said suit that the property insured, while recorded in the name of plaintiff, was actually community property.

On the same date a similar suit was filed against the Allemannia Fire Insurance Company of Pittsburgh on the same claim as was brought against the defendant company.

These suits were consolidated for trial. On the day of the hearing, an exception of no cause of action was sustained by the court as to the claim of plaintiff and her husband against the Allemannia Fire Insurance Company and at that time, it having come to the knowledge of plaintiff's counsel in the suit against the defendant company that the property insured was not community property, but the separate and paraphernal property of the plaintiff, he dismissed, without prejudice to file another suit, the suit filed by plaintiff and her husband against the defendant company. The date of the dismissal without prejudice is December 11, 1933.

On January 19, 1934, the plaintiff brought the present action in her own name against the defendant company.

The petition alleges, in substance, as follows:

That the plaintiff, on September 10, 1929, entered into a contract of insurance with the defendant, under the terms of which the defendant insured in the sum of $1,500 the property No. 514 Dolhonde street, Gretna, La., for a term of three years, and that plaintiff paid to the defendant the required premium of $15.75. It is alleged that in issuing the policy of insurance the defendant company, as a result of the error of its agent who solicited the insurance issued the policy in the name of plaintiff's husband and not in the name of plaintiff. It is further set forth that in the proceedings entitled "Mrs. Marietta Guccione, Wife of Pascal Guccione, and Pascal Guccione, her Husband, v. New Jersey Insurance Company of Newark, New Jersey," No. 9657 of the docket of the Twenty-Fourth judicial district court for the parish of Jefferson, it was alleged that the property insured was community property; that said allegation was made through error and was discovered only on the day the case was called for trial, and that, upon discovery of the mistake, the plaintiff dismissed the proceedings No. 9657 as in case of nonsuit, without prejudice to file a new suit. It is further averred that in the proceedings No. 9658 of the docket of said court the plaintiff had filed suit against the Allemannia Fire Insurance Company of Pittsburgh upon the same claim, but that said suit was dismissed as to that defendant, the court maintaining an exception of no right or cause of action. It is further alleged that the property which is the subject of the contract of insurance is not community property, but was and is the separate and paraphernal property of the plaintiff, who purchased same with her separate funds under her administration and control; that a fire occurred upon the premises on February 1, 1932; that the insurance company appointed adjusters, who denied liability on the proof of loss as filed upon the ground that the amount of the claim was excessive, and that the claim was made in the name of plaintiff's husband upon the policy, and that the property belonged to the plaintiff. It is alleged that the amount of the damage as a result of the fire was appraised and fixed at the sum of $2,068.67, and that the pro rata of the Allemannia Fire Insurance Company of Pittsburgh was $1,292, which was paid, and that the pro rata of the defendant company was $775, liability therefor being denied by the defendant. The petition concludes with a prayer that plaintiff have judgment in her favor and against

the defendant reforming and correcting the insurance policy issued by defendant dated September 10, 1929, in the name of Pascal Guccione, so as to declare that said policy was issued in the name of the plaintiff, and construing the policy to cover the property described as No. 514 Dolhonde street, Gretna, La., owned by the plaintiff as her separate property, and that plaintiff have further judgment against the defendant in the sum of $775.75, with interest, penalties, and attorney's fees.

The defendant appeared and filed an exception of prescription. This exception is based upon the following grounds: That the policy issued is a Louisiana standard form of fire insurance policy, containing the provision "no suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity until after full compliance by the assured with all the foregoing requirements, nor unless commenced within twelve months next after the fire." It is urged that, the fire having occurred on February 1, 1932, and the suit not having been filed until January 19, 1934, the previous suit, No. 9657, filed by plaintiff and her husband against the defendant, did not have the effect of interrupting the running of the prescription of one year for the reason that the plaintiff voluntarily discontinued and abandoned said suit.

The district judge overruled the plea of prescription and the case proceeded to trial on its merits, resulting in a judgment in favor of the plaintiff reforming the policy of insurance and awarding the amount claimed, together with penalties and attorney's fees. Wherefore this appeal.

Our attention is first directed to the plea of prescription.

This suit, being one for recovery on a contract, the ten-year liberative prescription would ordinarily apply, unless there is some provision of law which fixes a shorter time in which the demand should be brought.

■ Section 22 of Act No. 105 of 1898, as amended by section 1 of Act No. 255 of 1914, provides that no fire insurance company shall issue fire insurance on properties in this state other than those which shall conform to the requirements of the New York standard form of fire insurance policy of the form now in force in the state of Louisiana, this standard form, being used by the parties in the case at bar, in accordance with law, provides that the action or suit for recovery of any claim on the policy shall be commenced within twelve months next after the fire. In the case of Tracy et al. v. Queen City Fire Insurance Company, 132 La. 610, 61 So. 687, Ann.Cas. 1914D, 1145, it was held that the limitation of actions to one year contained in fire insurance policies on the New York standard form, as prescribed by Act No. 105 of 1898, is not properly a contractual limitation, but is one specially prescribed by the law of Louisiana and governed by the rule laid down in R.C.C. art. 3518 with reference to the interruption of prescription. See, also, Edson v. Merchants' Insurance Company, 35 La.Ann. 353; Blanks v. Insurance Company, 36 La.Ann. 599, and Riddlesbarger v. Insurance Company, 7 Wall. 389, 19 L.Ed. 257.

From the foregoing, it will be seen that the provision of the policy requiring suit to be brought within twelve months after the fire is valid, and, in the instant case, unless the first suit brought by plaintiff and her husband against defendant company interrupted prescription, the exception is well taken.

■ Article 3518, R.C.C., dealing with the causes which interrupt prescription, stipulates that citation of the defendant is necessary in order for prescription to be interrupted. This article has been superseded and repealed by Act No. 39 of 1932, which specifies that the filing of the suit shall interrupt all prescriptions. Hence, the filing of the first suit by plaintiff and her husband for the recovery upon the policy on October 4, 1932, interrupted the toll of prescription, and unless it can be said that the discontinuance of that suit by the plaintiff, without prejudice to file a new suit, had the effect of an abandonment of the claim, the plea of prescription cannot be sustained.

■ Counsel for defendant insurance company relies upon article 3519, R.C.C., which reads, in part, as follows: "If the plaintiff in this case, after having made his demand, *abandons or discontinues it*, the interruption shall be considered as having never happened." (Italics ours.)

We have emphasized the phrase "abandons or discontinues it" because an interpretation of the language used by the Code is necessary in determining the effect of the discontinuance of the first suit. The fact that a plaintiff discontinues a suit without prejudice is, to our mind, conclusive evidence of the fact that he intends to renew his demand again under more favorable circumstances.

But able counsel contend that, under the jurisprudence, the fact of discontinuance of the action prevents the filing of the first suit from being used as an interruption of prescription, and it is of no moment that the plaintiff, in discontinuing the first suit, evidenced an intention of renewing it under more favorable circumstances.

Without the aid of previous adjudications on this subject, it would seem that the word "discontinues," as used in the codal article, is closely associated to the word "abandons," and that the doctrine of noscitur a sociis would be applicable; in other words, that a discontinuance of a suit by the party plaintiff, evidencing on its face an intention to pursue the demand in another action, would be inapposite to the abandonment contemplated by the Code. The intention of the framers of our law, in providing that, if the demand is abandoned or discontinued, it shall not have the effect of interrupting prescription, contemplated an abandonment on the part of plaintiff without reservation of his rights to pursue the cause of action further. For, if it were otherwise, why would the word "abandon" have been used. "Abandon" evidences an intention to withdraw forever, and, unless the cases cited by the defendant have foreclosed us from holding thus, our indelible impression is that in the case at bar the filing of the first suit had the effect of interrupting the running of prescription, for the reason that the plaintiff, in discontinuing that suit, specifically reserved her right to file a new suit and did not abandon or discontinue it in the manner intended by article 3519 of the Code, so that the interruption could be considered as having never happened.

The cases relied upon by the defendant are Smith v. Gibbon, 6 La.Ann. 684; Dennistoun v. Rist, 9 La.Ann. 464; Davis v. Young, 35 La.Ann. 739; Cassou v. Robbert, 166 La. 101, 116 So. 714, and Depetro v. Mitchner, 18 La.App. 290, 138 So. 466. We shall consider them separately.

In the case of Smith v. Gibbon, supra, it does not appear that the plaintiff, in discontinuing the first suit, reserved any rights to further pursue the cause, and this question is not discussed by the court. In fact, a reading of the opinion discloses that the only portion devoted to the interruption of prescription is in the last sentence, where it is said, "it is to be observed, that the first suit does not interrupt the prescription, because it was voluntarily abandoned. Code, art. 3485." That case is not authority for the proposition to be decided here, for

the plaintiff contends that she did not voluntarily abandon the first suit, but, on the contrary, that she discontinued that suit without prejudice and with specific reservation of her rights to file another suit.

In the case of Dennistoun v. Rist, supra, plaintiff discontinued the first suit without reservation of any right to file another suit, and there is language in that case which might be interpreted as sustaining the contention of the defendant. On page 465 of the report (9 La.Ann.) it is said: "Although it is not impossible from the matters appearing on the record that plaintiffs, fearing they were not able to make out their case, and that judgment would therefore be rendered in favor of defendants, applied for a nonsuit, not with the intention of abandoning their claim, but on the contrary, with the intention of renewing it under more favorable auspices, still, under the authority of the cases above cited, we are constrained to regard their act as a *voluntary* discontinuance in the sense of article 3485, of the Civil Code." (Italics ours.)

We construe the above quotation to mean that if the plaintiff wishes to preserve his rights, so that the filing of the first suit operates as an interruption of prescription, he should evidence his intention to file another suit by a reservation of his rights in the motion to discontinue.

In Davis v. Young, supra, the question here presented was not determined, the court, however, asserted that when the plaintiff moves for a voluntary nonsuit, prescription is not interrupted, whatever intention may be made to appear to the contrary. This language is merely dicta, as the assertion was unnecessary in disposing of the question there involved.

In Cassou v. Robbert, supra, it was held that the voluntary discontinuance of a prior suit does not interrupt prescription under article 3519 of the Code. There is no discussion as to any reservation of rights on the part of the plaintiff to file another suit, and, for this reason, it cannot be maintained that the case is authority for the question here presented.

Much reliance is had by the defendant on the case of Depetro v. Mitchner, supra, decided by our learned brothers of the First Circuit. A summary of that decision will reveal that the plaintiff in that case had attempted to establish facts at variance with the allegations of his petition; that the testimony was objected to, and that the objection was sustained by the lower court.

Counsel for plaintiff realized that he could get no further, and he dismissed the suit as of nonsuit. The suit was instituted again, and a plea of prescription was maintained. A reading of the decision will reveal that it is based upon the case of Dennistoun v. Rist, supra, and that other cases of a similar nature, decided by the Supreme Court, are not discussed.

Our conclusion in the analysis of the line of authorities advanced by the defendant is that it has been held that, where a voluntary nonsuit is taken by the plaintiff, or he moves to discontinue his first suit, and thereafter files a second suit, the first suit does not operate as an interruption of the running of prescription under article 3519 of the Code, even though there may be evidence to the effect that plaintiff, in dismissing his first suit, intended to pursue the demand further in another cause of action under more favorable auspices. But it will be observed that in none of these cases has the plaintiff, in his motion to discontinue, specifically reserved his right to file another suit.

On the other hand, it has been held by the Supreme Court, in another line of authorities which we shall presently consider, that where a case is called for trial and the plaintiff not appearing is nonsuited because of his absence, such nonsuit does not operate as an abandonment of the cause of action so that the interruption may be considered as never having happened.

In the case of Norwood v. Devall, 7 La. Ann. 523, it is said: "We think, the expression abandoned means an active abandonment, and not such an abandonment *as may be implied from the absence or default of the litigant, at the time of the trial.*" (Italics ours.) See, also Mechanics' & Traders' Bank v. Theall et al., 8 La.Ann. 469.

Again, in the case of Wilson v. Marshall, 10 La.Ann. 327, at page 331 of the report, it is held: "But the weight of authority upon the construction of this Article of the Code [article 3519], is that *it contemplates a voluntary, intentional active abandonment.*" (Italics ours.)

To the same effect see Sheldon v. Reynolds, 14 La.Ann. 692; Succession of De Marigny, 22 La.Ann. 171; Locke v. Barrow, 25 La.Ann. 118; Hall v. Zion Travelers Second Baptist Church (Court of Appeal, Orleans) No. 7823 [See Louisiana and Southern Digest]; Gaines v. Hennen, 24 How. 553, 16 L.Ed. 770.

It appears from the line of authorities above set forth that, where the plaintiff, because of his lack of diligence, or other reason, fails to appear when the suit is called for trial and is thereupon nonsuited by the court, such nonsuit can never have the effect of an abandonment of the cause of action within the purview of article 3519 of the Code. By the other line of authorities, where plaintiff moves to dismiss without a reservation of rights, he is conclusively presumed to have abandoned his cause of action. But no case may be found where, as in this case, the plaintiff dismissed his suit with a preservation of his rights to pursue the cause of action in another suit under more favorable circumstances. It must be borne in mind that the underlying theory of the law of prescription is to prevent the prosecution of stale claims. In the case at bar, the plaintiff brought her suit timely, and, due to a mistake in the allegations of the first cause of action, it was found that the case could not be proceeded with to judgment, and, for this reason alone, her counsel discontinued it, with specific reservation of the right to file a new suit. Instead of confessing the error, counsel could undoubtedly have informed the court that, while a mistake had been made, under the jurisprudence he was not allowed to dismiss the cause, but that the court itself should dismiss it. In such case the first suit would have interrupted prescription, but, because counsel for plaintiff did the sensible thing upon recognition of the mistake and discontinued the first suit without prejudice, it is said that article 3519 of the code should be construed by us to mean that this was a voluntary abandonment of the cause of action.

We are of the opinion that counsel for plaintiff did the correct thing in discontinuing the first suit without prejudice, and that the discontinuance did not operate as an abandonment or discontinuance of the cause of action as contemplated by article 3519 of the Code.

Finding that the first suit brought by the plaintiff and her husband interrupted the running of prescription, the plea of the defendant is overruled.

We next consider the case upon its merits.

■ The suit is one to reform the policy so that the plaintiff is declared to be the assured therein, and for judgment against the defendant for the amount of the loss.

The real defense to the action is set forth in paragraphs 17, 18, 19, and 20 of

the answer, and is as follows: That the policy covering the property insured was issued by the defendant through its authorized agent, The Jefferson Insurance Agency, Inc., to plaintiff's husband at the request of one M. P. Ritchie, the agent of plaintiff's husband; that at the time of the issuance of the policy and until a proof of loss was filed, defendant and its agent, the Jefferson Insurance Agency, Inc., believed that plaintiff's husband was the owner, in fee simple, of the premises insured; that the policy sued upon contains the provision that it shall be void "if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple." It is averred, upon information and belief, that plaintiff's husband was *not*, at the time of the issuance of the policy, nor at the time of the fire, the sole and unconditional owner of said property, and that, therefore, the provisions of the policy were violated—*the moral hazard of said risk increased*—and, for this reason, the defendant is relieved from liability. It is further averred that the premium of $15.75 received by the defendant for the issuance of the policy has been tendered.

There is an alternative plea that, in the event the court should reform the policy, the plaintiff has failed to file proofs of loss under the provisions thereof.

We find the facts of the case to be as follows:

Plaintiff and her husband owned considerable real estate in the parish of Jefferson. One M. P. Ritchie was an insurance solicitor doing business in Gretna and had for some time taken care of the insurance on the property belonging to plaintiff and her husband. The legal title to some of the property was in the name of the plaintiff and the title to other parcels of real estate was in the name of her husband. The title to the property, which is covered by the policy, is in plaintiff's name, and the deed recites that she purchased the same with her separate and paraphernal funds under her administration and control, and this fact is recognized by her husband by his appearance in the act of purchase.

Plaintiff and her husband both testify that, at the time the policy of insurance here sued upon was issued, it was discovered that, through error, plaintiff's husband was named as the assured therein; that this fact was called to the attention of Ritchie,

and he informed them that, as long as the policy was issued on that certain building, it did not make any difference as to who was designated the assured in the policy.

Mr. Ritchie, testifying for the plaintiff, does not recall that the plaintiff and her husband mentioned to him that the policy of insurance was issued in the wrong name. However, he testifies that he was an insurance solicitor working for the Jefferson Insurance Agency, Inc., on a commission basis; that the Jefferson Insurance Agency, Inc., was managed by a man named Boggs, who was well acquainted with the plaintiff and her husband; that he knew that Mr. Boggs had written other insurance for plaintiff and her husband and assumed that Boggs had knowledge as to whose name the policy should be issued in. The witness states positively that he was in the employ of the Jefferson Insurance Agency, Inc., as solicitor for that agency in Gretna, and that he received commissions upon the business procured by him.

The defendant produced only one witness, one Harry S. Kaufman, Jr. He testified that he was treasurer of Emery & Kaufman, Limited, who are general agents in Louisiana for the defendant company; that the Jefferson Insurance Agency, Inc., was a subagent of the defendant company, and that he knew that Mr. Ritchie was never employed as an agent for the defendant.

There is no substantial denial of the evidence of Ritchie. Strange to say, the defendant did not produce Boggs as a witness for the purpose of controverting Ritchie's statement that he (Ritchie) was employed by Jefferson Insurance Agency, Inc., but preferably depended upon the testimony of Kaufman, who, admittedly, had no connection with the Jefferson Agency.

Counsel for defendant contend in their brief that this is not properly a suit for the reformation of the contract because, in order to reform a policy of insurance, three elements must exist before a case is properly presented. It is said that the required elements are:

(1) The intention on the part of the owner to procure specific insurance;

(2) The communication of that intention to the underwriter and his agreement to insure;

(3) Mutual error, or error on the part of the underwriter.

The case of Gaudet v. North River Insurance Company, 156 La. 719, 101 So. 118, is cited as sustaining this proposition. But here we find that the three required concurring elements exist, for the facts show that the plaintiff intended to procure specific insurance, that the intention was communicated to the underwriter (i. e., the Jefferson Insurance Agency, Inc., as agent for the defendant company), and that the insurance company insured the property of the plaintiff, and that, through error on the part of the underwriter, acting through its agent, Jefferson Insurance Agency, a mistake was made in issuing the policy in the name of the husband rather than in the name of the wife.

In truth, we see no substantial defense to the payment of the claim presented. There is no contention that fraud was involved, either relating to the procurement of the insurance or with reference to the ensuing loss as the result of the fire. The defendant insurance company attempts to screen itself from liability behind a maze of technicalities, which cannot be favored in the interest of the administration of justice. Its endeavor to defeat recovery upon the grounds presented we find to be inconsistent with the public policy of this state, as announced by the Legislature in Act No. 222 of 1928, providing, in substance, that breaches of warranties and conditions contained in policies of fire insurance shall not have the effect of voiding the same unless such breach would increase either the moral or the physical hazard under the policy.

The defense that the statement by plaintiff's husband, that he was the sole and unconditional owner of the premises insured, resulted in increasing the moral hazard of the risk, is not sustained by the evidence.

But it is said that recovery herein must be denied apart from the exception of prescription and apart from the alleged failure to make out a proper case for reformation of the policy (both of which defenses have been hereinabove discussed and disposed of) because plaintiff has not proved her compliance with her warranty of unconditional and sole ownership, and because she has filed no proof of loss, and because the amount of the loss has never been ascertained. We shall discuss these contentions in their order.

The claim that the plaintiff has not proved her warranty of unconditional and sole ownership is based upon the premise that, although the deed to the property states that it was purchased with the separate and paraphernal funds of the wife under her separate administration and control, which fact is concurred in by the husband, that, nevertheless, the property is community property under the provisions of article 2402 of the Civil Code.

The Supreme Court has held in a number of cases that the burden is always upon the wife, notwithstanding recitals in the deed similar to those here, to produce evidence to rebut the presumption of community ownership, and that such a stipulation is not binding upon the creditors of the community estate. See Shaw v. Hill, 20 La. Ann. 531, 96 Am.Dec. 420; Gogreve v. Dehon, 41 La.Ann. 244, 6 So. 31; Houghton v. Hall, 177 La. 237, 148 So. 37, 39; Breland v. Great States Insurance Company (La.App. 1st Cir.) 150 So. 313.

And in Succession of Howell, 177 La. 276, 148 So. 48, it was held that a claim of a wife, against a succession for personal services rendered to the deceased during his lifetime, was a community asset, for which suit could only be brought by the husband as head and master of the community, notwithstanding the provisions of Act No. 283 of 1928 relative to the emancipation of married women. The opinion of the court, however, distinguishes the case from that of Paul v. Arnoult, 164 La. 841, 114 So. 706, 707, which latter case, in our opinion, controls the situation here.

The main defense urged by the defendant in the first suit filed by plaintiff and her husband and in the suit now under consideration is that the husband had breached a warranty contained in the policy in that he was not the sole and unconditional owner of the premises insured. This allegation is equivalent to an assertion that the property insured belonged to the plaintiff, because the legal title is in her name. This defense, presented in the first suit, apparently induced the plaintiff and her husband to discontinue that suit and file the present action, and, although the defendant maintains the same defense to this action, it now attempts to avert liability by contending that the property belongs to the community of acquêts and gains.

The conduct of the defendant estops it from asserting the contention made. Moreover, it seems to us that the only interest of the defendant is to absolve itself from further liability on the policy and to be

853

assured that a similar claim will not be made against it by the husband. The testimony of plaintiff's husband, as well as the deed to the real estate, exhibits that he has abandoned whatever claim he might have had on the policy of insurance.

The view we take of this matter is not without precedent. In the case of Brumfield v. Louisiana Mutual Benevolent Association, 11 La.App. 547, 123 So. 408, 409, First Circuit, the wife sued for recovery on a policy of fire insurance. The defense was made that the property insured belonged to the community of acquêts and gains. The court, in maintaining the wife's right to recover, said: "Whether the property lost was separate property of the wife or community property can be of little concern to defendant. A receipt from the wife or the husband or from both of them will forever acquit defendant from any further liability on the policy. That is a question of law which does not affect the sincerity and honest motives of plaintiff. There was no misrepresentation by plaintiff and therefore no fraudulent concealment."

The case of Paul v. Arnoult, supra, is strikingly similar to the case at bar. It appeared there that the husband leased property belonging to his wife in his own name. The tenant, however, had knowledge that the property belonged to the wife. The wife sued the tenant for past-due rent, and the tenant defended upon the ground that the lease was in the name of the husband and that the property rented was community property, and that the husband only was vested with the right of action to recover. The Supreme Court, in sustaining the wife's right of action, said: "And where both husband and wife declare that the property was leased for the sole benefit of the wife (the wife by claiming the rents as her own and the husband by joining her and testifying that he acted only as her agent), *we do not think it lies in the mouth of this defendant* (who has occupied the premises undisturbed and who is herein sued upon negotiable promissory notes given for the rent and payable to the holder thereof) *to assert the contrary and thereby defeat a claim which he admittedly owes to the one or the other and which would be fully discharged by a payment made herein.*" (Italics ours.)

In the case at bar the defendant company has admittedly received consideration for the coverage granted. It insured the property No. 514 Dolhonde street against fire. A fire occurred, and defendant became liable for the loss unless there was fraud or misrepresentation, or a breach of warranty on the part of the plaintiff or her husband increasing the moral hazard or risk assumed by the defendant. It is obvious that the moral hazard has not been augmented here.

There is no merit in the contention that the plaintiff did not file a proof of loss. See Act No. 222 of 1928.

Finally, it is avouched that the amount of the loss has never been ascertained. But the evidence discloses that the loss was actually ascertained by appraisers representing the Allemannia Fire Insurance Company of Pittsburgh and the plaintiff. The adjusters representing the Allemannia Fire Insurance Company also represented the defendant company.

We believe, however, that the district court erred in awarding the plaintiff the sum of $250 for attorney's fee. The liability of the defendant upon the policy of insurance is $775.75. The allowance of an attorney's fee of $250 for the collection of the amount of this loss is excessive. We therefore reduce the attorney's fee allowed by the trial court to $100, which sum is more in accord with the jurisprudence. See Marine Bank & Trust Company et al. v. Home Insurance Company, 170 La. 193, 127 So. 598; Federico Macaroni Mfg. Company v. Great Western Fire Insurance Company, 173 La. 905, 139 So. 1, 79 A.L.R. 1256; Martino v. Phœnix Fire Insurance Company, 9 La.App. 337, 120 So. 511, and Isaac Bell, Inc., v. Security Insurance Company, 175 La. 599, 143 So. 705.

It does not appear that the defendant company filed a motion for a new trial, or otherwise directed the trial judge's attention to the excessive amount permitted for attorney's fee. For this reason, we are of opinion that the defendant should be taxed with costs of appeal.

For the reasons assigned, the judgment of the trial court is amended by reducing its award to plaintiff, for attorney's fee, from $250 to the sum of $100, and in all other respects the judgment appealed from is affirmed.

Defendant to pay costs of appeal.

Amended and affirmed.