### BRELAND et al. v. GREAT STATES INS. CO.*

No. 1230.

Court of Appeal of Louisiana. First Circuit.

Oct. 5, 1933.

Bascom D. Talley, of Bogalusa, for appellant.

Benj. W. Miller, of Bogalusa, for appellee.

*Writ of certiorari denied November 27, 1933.

ELLIOTT, Judge.

The facts of this case are as stated in our original opinion (147 So. 714). At the time our former opinion was handed down Wm. M. Breland was not a party to the suit. He had been eliminated by a ruling of the lower court on an exception of no cause of action, but after the case was decided on appeal, and a rehearing had been granted, he obtained an appeal from the judgment of dismissal, which by consent of defendant, when the appeal was resubmitted, the submission included, and brought up his appeal at the same time, as one of the issues in the case.

Wm. M. Breland and his wife Mrs. Reda Wheat Breland brought the suit as joint plaintiffs alleging that Great States Insurance Company is indebted unto them in the sum of $950, and their prayer is for judgment accordingly.

In the last article of their petition they aver: "Your petitioners now show that there is some doubt as to whether or not this property is community, but aver that this is of no concern to the defendant since a receipt from either will acquit the defendant."

Defendant's answer avers with emphasis that the goods insured under the policy was community property, and urges that fact as one of its reasons why the policy should be declared void and of no effect. Wm. M. Breland and Mrs. Reda Wheat Breland take the position that the property covered by the policy was acquired by and belonged to Mrs. Breland, in whose favor it was made payable.

Defendant contends that it belonged to the community of acquêts and gains that existed between Mr. and Mrs. Breland, and, as the husband is the head and master of the community, nobody but him can sue on the policy. Defendant's contention on this subject was one of the questions on which we acted in our former opinion.

The question is before us again, this time with Wm. M. Breland before us as a party to the appeal.

The presumption is that the property acquired during the marriage belongs to the community. The law says: "This partnership or community consists * * * of the produce of the reciprocal industry and labor of both husband and wife, and of the estates which they may acquire during the marriage * * * by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase." Civil Code, art. 2402. The furniture of most value was purchased by Mrs. Breland from Breland's Furniture Company and Cohen Furniture Company after her marriage. The only evidence which indicates that this furniture may have been partly paid for by her with money which belonged to her and not to the community is found in the testimony of Wm. M. Breland:

"Q. How many bills of furniture were purchased from the Breland Furniture Company? A. I bought one, and after I got married my wife didn't want the cheap stuff I had then; her father had given her Three hundred dollars and she wanted to buy something better." Objection made.

After a ruling he resumed: "She told me she didn't want this cheap furniture, most of it was second hand cheap stuff, and asked me could she take her money and buy some more stuff, and I told her yes, and she went to Breland Furniture Company and bought some more stuff."

Mrs. Breland testified:

"Q. You did purchase furniture from the Breland Furniture Company on the installment plan? A. I paid some down when I got it and I told them I would pay the balance as I could in weekly payments. * * *

"Q. How did you make these weekly payments? A. I would pay some as I could: If I couldn't pay it, my husband would pay it."

The above is about all she says on the subject. Her father was not a witness in the case. Mr. Breland testifies that his wife's father gave her $300, but the evidence shows that the furniture was bought partly on credit; the credit price payable in installments. The amount paid in cash does not appear; neither does it appear that the $300, which Mr. Breland says his wife's father gave her, was actually used for that purpose. The fact that the wife did the bargaining does not indicate that the furniture was purchased for her separate account, nor that the credit was extended to her personally.

Our review of the evidence on rehearing has convinced us that the furniture and other articles purchased by Mrs. Breland from Breland Furniture Company and Cohen Furniture Company was a community purchase, the property community property, and that the policy procured thereon in the name of Mrs. W. M. Breland, and upon which suit has been brought, is an asset of the community. Having concluded that the property was a community purchase, and the policy an asset of the community, this suit cannot be maintained unless Wm. M. Breland is restored as the plaintiff in the case.

We hold that the husband, head and master of the community, when present and not suffering under any incapacity of mind, is the only person who can sue to recover a community asset.

Act No. 283 of 1928, due to the provision made in section 5, did not change the law on that subject. Ducre v. Milner (La. App.) 140 So. 161; Grantham v. Smith, 18 La. App.

519, 132 So. 805, 810; Coker v. Harper, 8 La. App. 402. There are numerous decisions of the Supreme Court to the same effect.

Our former holding herein was influenced by our opinion in the case of Brumfield v. Mutual Benevolent Ass'n, 11 La. App. 547, 123 So. 408. In that case the evidence showed that Mrs. Brumfield was a married woman living with her husband; that the legal community of acquêts and gains existed between them; that Mutual Benevolent Association justly owed the debt represented by the policy sued on by Mrs. Brumfield; but it appeared impossible to satisfactorily determine under the evidence in the case whether the policy was an asset of the community or the separate property of Mrs. Brumfield. Mutual Benevolent Association contended that she could not sue on nor recover under the policy; that the suit should have been brought by Mr. Brumfield. The policy sued on in the Brumfield Case was an unusual arrangement; that acts of Mutual Benevolent Association's agent was a matter which the opinion took into account. The present case has some of the features of the Brumfield Case, but in others it is different, and there is not the same uncertainty as to the community status of the policy. In the Brumfield Case we declined to follow a course that would have resulted in the defeat of a claim that was justly due. In Paul v. Arnoult, 164 La. 841, 114 So. 706, the Supreme Court in the same way declined to follow a course that would have resulted in the defeat of a just claim.

It follows from our conclusion herein that the lower court erred when it dismissed Wm. M. Breland from the suit on the ground that he was not a party to the contract of insurance. He was the beneficiary under the contract with right to sue thereon as head of the community. The judgment of dismissal is therefore annulled, avoided, and set aside. Wm. M. Breland is now restored as the plaintiff in the case, and recognized as the only person who has a right to sue on the policy and contest the issues raised by the defendant insurance company. Succession of Howell, 177 La. 276, 148 So. 48. Mrs. Breland is dismissed from the case.

The policy contains a stipulation: "The insured as often as required—shall * * * submit to examination under oath by any person named by the Company and subscribe the same." Mr. Breland declined to submit himself for examination in the lower court, and the lower court supported him in his refusal. As he is the proper party to sue, and has brought suit on the policy, he should comply with this policy undertaking. The right of defendant to examine him, after timely and proper notice first given him for the purpose, is recognized.

Defendant contends that the policy is payable to Mrs. W. M. Breland; that her interest in it is not truly stated; that the interest of the insured in the property was, at the time of the insurance, and of the fire, other than unconditional and sole ownership; and that the policy is void and without effect on that account. There is evidence indicating that a small part of the furniture insured under the policy may have been acquired by W. M. Breland previous to his marriage, but that fact, if it be a fact, does not, as we will now show, necessarily avoid the policy. The facts indicate that the policy was made payable to Mrs. Breland as the result of an agreement entered into between Mr. Breland and C. L. Black, defendant's agent, on that subject. The evidence shows that defendant's agent understood the situation concerning the ownership of the property at the time the policy was issued. We quote Mr. Black as follows:

"Q. Did you examine the household goods covered by the policy? A. Yes Sir.

"Q. Where was it situated? A. In Mr. Breland's residence on Second Avenue in Bogalusa. The policy was originally on Mr. Breland's effects, located on Second Avenue. In about two or three weeks following that, he moved, therefore *we* took up the original policy and issued a new policy covering some additional effects which is now or was on Third Street in Bogalusa."

Recalled, he made a further statement:

"Q. Did you have occasion to go down and examine the furniture before the policy was issued? A. Yes Sir. There were two policies. The first policy had just been in force about two weeks, I think, before the next one was issued. Before issuing the first policy I met Mr. Breland at his house, and at that time, I made a general inspection of the insurable property. He moved in about two weeks. I took up the matter again *with him* and there would be about three changes to make in the policy if I allowed it to remain in force which meant new location, new rate, and new amount of insurance. He had taken on additional * * * and I thought it would be more satisfactory *to him* if I would cancel the first policy and issue a new one on account of the three changes that would have to take place."

We have italicized the word "we" used in his first statement, and the words "with him" and "to him" used in the second to show that the policy sued on was negotiated and arranged for between him and Mr. Breland. There is no evidence that Mrs. Breland was ever consulted about the matter. The law Act No. 222 of 1928 provides that the ground urged as a breach in order to avail the insurer must not only increase the moral or physical hazard under the policy, but it is not available as a defense if the facts constituting such breach existed at the time of

the issuance of the policy and were known to the insurer or his agent, except in case of fraud or collusion, etc., anything in the policy to the contrary notwithstanding.

Our prima facie idea is that the fact that the policy was made payable to Mrs. Breland did not increase the moral or physical hazard, and in the same way it appears to us from the testimony of Mr. Black, defendant's agent, that he knew all about the new furniture acquired as well as that previously owned, and arranged the matter of the insurance thereon to suit the wishes of Mr. Breland, and therefore there was no breach; and that even if some of the furniture insured did belong to W. M. Breland previous to his marriage, the policy is not thereby invalidated because defendant's agent having entered into the contract with Mr. Breland, and having received the premium, knowing the situation in that respect, such knowledge defeats a defense on that ground. But we have concluded not to cut defendant off from any further showing he may be able to make on that subject. The law provides if there be fraud or collusion the exclusion provided for in the statute shall not prevail, and it may be that the defendant can make good its defense on this ground.

Another reason is, that when the judgment appealed from was rendered in the lower court, W. M. Breland, between whom and defendant's agent the policy was negotiated, had been eliminated from the case, and we think the issue of validity should be determined contradictorily between the defendant and W. M. Breland.

▆▆ Defendant contends that after insuring the property plaintiff incumbered it with a chattel mortgage or mortgages. If that be true, it may then be said that the hazard was thereby increased and the warranty on that subject breached. The policy stipulated: "This entire policy unless otherwise provided by agreement endorsed hereon or added thereto shall be void; * * * if the subject of insurance be personal property and be or become encumbered by a chattel mortgage. * * * "

The policy bears date December 30, 1930, and is for the period of one year. On February 27, 1931, the plaintiff granted a chattel mortgage in favor of General American Finance Company on a list of articles of furniture described in the act of mortgage. The furniture is said in the act to be located on Third street in Bogalusa. On March 18, 1931, plaintiff granted a chattel mortgage in favor of Breland Furniture Company on a list of furniture and other articles of household use described in the act of mortgage, and which is referred to in the act as being the same property acquired by the said Bill Breland from Breland Furniture Company by purchase of even date with this act. The Third street in Bogalusa is the place to which W.

M. Breland moved after leaving his place of residence on Second street.

Plaintiff mentions in his brief and the evidence shows that he was not present when the acts of mortgage were written, but the evidence shows that he willingly signed the acts, and the acts are both apparently in authentic form. If the acts of mortgage cover the property insured, they are just as effective as if plaintiff had been looking on while they were being written, in so far as concerns the defense urged by the defendant.

The policy description is as follows: "On household and personal effects of every description including awnings, whether in position or stored upon the premises * * * belonging to the insured and all members of the insured's family usual or incidental to the occupancy of the premises by the insured * * * all while contained in the above described premises."

Taking the list of articles enumerated in the acts of mortgage and taking into account all the evidence on the subject, we are unable to hold with reasonable certainty that the articles mentioned in the act, or any of them, are covered by the policy. Mr. Breland testified that the property insured was not the property mortgaged, but after all the matter is not clear and we do not wish to act on this question until it is made as clear as can be done by evidence that may be produced by the parties. The evidence taken will remain and stand as taken, but additional evidence will help us in acting on this question. Several times during the trial questions were asked, the purpose of which seemed to be to bring out whether all or any of the articles enumerated in the acts of mortgage were included in the policy undertaking, but in each instance the answer, saving a rather general statement made by Mr. Breland, was turned aside to other matters, and therefore further evidence on the subject is necessary.

Then again the value of the property destroyed in the fire, at the time of the fire, that did come under the policy undertaking, is a matter about which we would like to have further evidence.

For these reasons, and for the further reason because Wm. M. Breland, the plaintiff, was not a party to the judgment appealed from, we have decided to recall our former opinion herein, annul and set aside the judgment appealed from, and reopen the case so that judgment may be rendered in the lower court contradictorily between the defendant and Wm. M. Breland, as plaintiff. The judgment to act on the question whether the defendant had knowledge of the situation concerning the ownership of the furniture at the time the policy sued on was issued, or whether he was induced to enter into the contract by any deception, fraud, or other wrongdoing practiced on him by W. M. Breland, and

also for the admission of any further evidence which either of the parties can produce showing whether any or all of the articles covered by the acts of mortgage were also covered by the policy, and, if so, what articles, and their value at the time of the fire, and also the value of all the property destroyed in the fire that was covered by the policy.

Our former opinion and decree herein is therefore recalled, the judgment appealed from is annulled, avoided, and set aside, and it is ordered that this case be remanded to the lower court and reopened, and further evidence heard for the purposes stated in this opinion. After the new evidence has been heard the lower court to render such judgment as it finds to be proper under the law and the facts of the case.