This is a proceeding by rule, instituted by the plaintiff, Mrs. Julia T. Charlton, against W.L. Bailey, a contractor, and his assignee, Central Lumber Co., Inc., the purpose of which is to have the said contractor's lien inscribed against a certain lot of ground in the City of Baton Rouge, which she alleges belongs to her in fee, in her separate right, cancelled and erased from the mortgage records of the Parish of East Baton Rouge.
After making the allegation regarding her ownership of the property, plaintiff *Page 647 
avers that on March 24, 1941, she employed W.L. Bailey to construct a house and garage thereon which she obligated herself to buy from Dr. Rufus Johnson, who then held title to the property. The contract price of the house and garage was $3,000, which amount was to be paid when it was completed and accepted by an inspector of the Federal Housing Administration.
Plaintiff evidently had not complied with the terms and provisions of the contract at the time the house is said to have been completed, which was about May 15 or May 17, 1941, and on August 18, 1941, the contractor, Bailey, filed and recorded his claim under which the lien would operate. In her petition the plaintiff alleges that the claim to preserve the lien was not filed and recorded in time as the law, Act 298 of 1926, fixes the period at sixty days after the last work has been done and material furnished. There was some discrepancy between the two days on which the lien was said to have been filed but that was cleared up in the testimony and it does not seem to be disputed now that sixty days had elapsed from May 15 or May 17, 1941, when the lien was filed. The lien is now being defended on the ground that there was some additional work done on the house, and also some material furnished, after acceptance, which had the effect of extending the time for its effectiveness and operation.
An important issue which now arises in the case is that involving the right of Mrs. Charlton to prosecute the rule and stand in judgment, as it is claimed that the property involved was and is community property of the marriage between herself and her husband, Charles H. Charlton, Jr., and therefore any proceeding relating to the same should have been instituted and carried on by the husband and in his name, as the head and master of the community.
Mrs. Charlton, had not alleged in her petition that the property belonged to her separate and paraphernal estate and was under her separate and paraphernal administration. The presumption in law being that it belongs to the community, in the absence of any such allegation, or declaration in the deed by which it was conveyed to her, the defendants naturally brought that matter out in the trial of the case by attempting to elicit from her testimony that the property is in reality community property. That of course forced Mrs. Charlton to rebut the presumption and as counsel for the defendants evidently did not believe that it had been rebutted, they filed an exception of no right or cause of action. The exception was not passed on in the lower court but it is seriously urged before us.
The testimony of Mrs. Charlton is the only one that was offered to rebut that presumption. It is to the effect that when she married Mr. Charlton in 1918, she had about $2,500 of her own money. She says that her mother had also given her at different times before she died in 1921, $5,000, in cash and checks. Her testimony relating to what she did with this money is very vague and indefinite, as can be judged from an answer she gave to one of the questions propounded to her. Her reply was in the form of a question: "Would you know if somebody asked what you did with money twenty years ago?", which was followed by the statement: "I put it in the general fund and spent it for various thing."
It appears that Mrs. Charlton operated a business of her own as a realtor and that she and her husband had separate accounts in the bank in which they kept their money up until a year ago when he became ill. With regard to the earnings from her business, she is as indefinite as with regard to the money she says she received from her mother. She does say that in the last three years she made in excess of $2,400. It does not appear that she ever invested any of her earnings however and she admits that when it was necessary she used her money for paying grocery bills, buying clothes and other things.
The foregoing is about the only testimony found in the record to show that the property involved in this proceeding was purchased by Mrs. Charlton with her separate and paraphernal funds, and obviously it is not near sufficient to establish that important fact. As far as the money she obtained from her mother is concerned, she certainly has not connected her purchase of the property with any money she may have derived from that fund, no matter what the amount was, nor from any revenues she may have derived from it. She would have to rely then on the proposition that she was engaged in a business of her own and she has not shown that the profits she claims to have made in that business came from the separate estate represented by the investment of the money she received from her mother. Bearing in mind that this was twenty years before *Page 648 
and that she seems to have thrown all of the money she had in the "general fund" as she refers to it, it strikes us that any separate money she may have placed in the fund as coming from her mother has long since lost its identity.
The question as to the money received by her from her separate business and whether it formed part of her separate estate, or went into the community of acquets and gains between herself and her husband, is definitely settled by the decisions in the cases of Houghton v. Hall, 177 La. 237, 148 So. 37 and Succession of Howell, 177 La. 276, 148 So. 48. An elaborate discussion of the effect of Act 186 of 1920, which, it was claimed changed the law with regard to the community status of property bought in the name of the wife with revenues received by her in conducting a business separate and apart from her husband, is to be found in the several opinions handed down in the Houghton case and any further comment at this time would be altogether superfluous.
On the issue that is presented under the exception, one of the cases that is relied on on behalf of the plaintiff is that of Otis v. Texas Co., 153 La. 384, 96 So. 1. The only thing that we can find in that case that is relevant to the point here at issue, is that the wife, whenever her deed is attacked on the ground that it does not show that the purchase was in fact made with the paraphernal funds under her administration, is accorded the right to show that the property was so acquired.
The question being one which has to be determined on the proof adduced by the parties, and the wife being held to the duty of overcoming the presumption in favor of the community, a burden which the plaintiff in this case had not discharged, we are of the opinion that the exception of no right or cause of action was properly urged. As the property belonged to the community of acquets and gains between Mrs. Charlton and her husband, it was the latter, as head and master of the community, who should have instituted this proceeding. Succession of Howell, supra, Breland v. Great States Ins. Co., La.App., 150 So. 313, Robinson v. Phœnix Assur. Co., Ltd., La.App., 150 So. 317.
There has been filed on behalf of the plaintiff, a plea of estoppel based on the ground that the contract for the construction of the house and garage on the property was entered into between Bailey and Mrs. Charlton, that nowhere did Mr. Charlton appear to be a party to it and that throughout its execution, Bailey treated Mrs. Charlton exclusively as the owner. Estoppel of course can be invoked to permit a person to avoid the consequences of his act when by such act he had induced another to do something to his detriment which the latter would not otherwise have done had the true facts been laid before him. But we cannot see where the plaintiff in this suit was misled by any act on the part of Bailey in signing the contract in which she represented that she was the owner of the property, nor can we see where she has done anything to her detriment because of any reliance she may have placed on his entering into the contract with her. The lien which is here claimed did not arise out of the contract itself but because of the fact that work was performed by the contractor on the property involved and he, not having been paid, recorded his claim in the mortgage records of the Parish. Under the circumstances, even had there been no written contract, if the claim was timely recorded, the lien would have come into existence and become operative just the same. We find no merit in the plea of estoppel and the same is therefore overruled.
For the reasons stated it is now ordered that the judgment appealed from be and the same is hereby reversed, avoided and set aside, and it is further ordered that there be judgment in favor of the defendants, sustaining the exception of no right or cause of action, and dismissing the plaintiff's suit at her cost. *Page 692