Raymond et als. vs. Conery.

ON APPLICATION FOR A REHEARING.

No. 12,563.

### WM. C. RAYMOND ET ALS. VS. EDWARD CONERY.

Upon the organization of the Civil District Court for the parish of Orleans created by the Constitution of 1879 all causes pending in the then existing Civil Courts for that parish were directed by the Constitution to be transferred to the *new* Civil District Court.

This invited legislative action to effectuate more fully the constitutional intendment. But none was taken. This failure resulted, *ex necessitate rei,* in remitting

Raymond et als. vs. Conery.

the method of removal to such regulations as the new courts might prescribe, or such orders pertinent thereto, as they might make, guided by the light of precedent and jurisprudence.

Hence, the supersession of the new courts did not, *ipso facto*, operate a transfer of the causes pending in the old courts to the new, nor were the records of the suits to be considered as of right, or in fact, filed, *eo instanti*, in the new courts.

Something was required to be done by the parties in interest in the pending causes to bring about their transfer, and until this was done the jurisdiction of the superseding court did not attach.

Without such action, the papers, or the record of a cause, remained in the hands of the city officials, appointed to their safe keeping, without preserving, after the long lapse of time as in this case, the status of a pending suit.

The instant case remained thus without action for its transfer for seventeen years, and meanwhile three of the four original parties to the suit had died, and the record was lost. Effort is now made to transfer, revive and substitute the record. This is met by the plea of prescription—held: The cause must be considered as having been abandoned and practically discontinued, and the attempt now made is viewed as tantamount to the bringing of the action anew after discontinuance, and the prescriptions applicable to such action are considerd as having not been interrupted. C. C. 3519-3551.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*W. S. Benedict* for Plaintiff in Rule, Appellant.

*Howe, Spencer & Cocke* and *Bernard McCloskey* for Defendant in Rule, Appellee.

Argued and submitted January 25, 1898.
Opinion handed down February 7, 1898.
Rehearing refused February 21, 1898.

The opinion of the court was delivered by

BLANCHARD, J.   Under the Constitution of the State of Louisiana, adopted in 1868, there was established in the parish of Orleans seven district courts known and designated by numbers from one to seven inclusive.

The Constitution of the State adopted in 1879 abolished these courts and substituted in lieu thereof two district courts—one known as the Civil District Court for the parish of Orleans, the other as the

Criminal District Court for the parish of Orleans—the former to have not less than five judges, the latter not less than two judges.

The District Courts thus created were subdivided into what are called "Divisions," and a judge assigned to each division.

The Constitution of 1879 ordained that, upon the organization of the courts created by the new Constitution, all causes pending in the courts established under the Constitution of 1868 "shall be transferred to the courts respectively having jurisdiction thereof under this Constitution." Art. 261.

This article seems to have invited legislative action to effectuate more fully its purposes. But the only enactment on the subject was Act No. 29 of 1880, providing for the transfer of causes pending in certain of the old courts to certain of the new courts established by the later organic law, and has no reference whatever to the transfer of causes from the old District Courts of the parish of Orleans to the new courts for that parish created by the superseding Constitution.

This failure of legislative direction for the removal of causes from the old District Courts of the parish of Orleans to the new court supeseding them resulted, *ex necessitate rei*, in remitting the manner or method of removal to such rules and regulations as the new court might prescribe, or such orders pertinent thereto as they might make, guided by the light of precedent and jurisprudence.

The Constitution of 1879 provided that, in the parish of Orleans, the new courts established by it should supersede the old courts on the first Monday of August, 1880, and they did so.

But this did not, *ipso facto*, operate a transfer of the causes pending in the old courts to the new, nor were the papers and records of the suits to be considered as of right, or in fact, filed, *eo instanti*, in the new courts. Under the constitutional provision the Legislature might have so ordered it, but the Legislature had remained silent. Under those circumstances something must be done by the parties in interest in the pending causes to bring about their removal from the old courts to the new, in order that the practical jurisdiction of the latter might attach.

The law had made no provision even for the proper custody of the records of pending suits. The clerks of the old District Courts became *functus officio* on the first Monday of August, 1880, along with their courts (Cheevers vs. Duffel, 32 An. 649), and there was

no warrant for the clerk of the new Civil District Court to take possession of the records as custodian thereof. The matter seems to have been called to the attention of the municipal authorities of the city of New Orleans and the necessity pointed out for some action looking to the safe-keeping of the records pending removal to the new court. The city authorities appointed a keeper of the records.

It appears that the judges of the Civil District Court provided a method by which a party might take the record of a case from the custody of this city official and file it in the Civil District Court. With reference to this, that one of the judges of the said court who sat upon the instant case says, in his reasons for judgment, that upon the organization of the court, shortly after the adoption of the Constitution of 1879, the judges were very soon called upon to consider the status of the cases pending in the civil courts which had been superseded, and whilst the conclusion was reached that the causes had not abated, it was the consensus of opinion that in order to give such causes the status of *live* cases, in the proper sense of the term, it was the intention of the framers of the Constitution that some action should be taken by the parties in interest, with the view of vesting the jurisdiction of the same in the newly established court. He states, also, it was the opinion of the judges that in the absence of such action, the Civil District Court was without jurisdiction or control over causes pending in the old courts and over the records of such causes, and that these records have been regarded as in the custody of the clerk of the Civil District Court only after they have been transferred upon the application of some party in interest from the defunct courts.

The Legislature having taken no action relative to the causes pending in the superseded courts, nor directed how or in what manner the jurisdiction of the Civil District Court should attach, it was competent for the judges of the latter court to make orders therefor. The Constitution, by investing the Civil District Court with jurisdiction, impliedly conferred the means necessary to its exercise. Prentice vs. Waters, 3 N. S. 522; Thomas vs. Cortes, 6 R. 44; Rhinehart vs. Doswell, 6 La. An. 767.

But the jurisdiction of the superseding court did not attach, nor was the cause transferred unless the action prescribed by the court was taken by the parties in interest. Without such action the

papers, or the record of the cause, remained in the hands of the city official appointed to their safe-keeping without preserving, after the long lapse of time, as shown in this case, *the status of a pending suit.*

These observations lead to the consideration of the case at bar.

In November, 1879, William C. Raymond, Theobald Forstall and Andrew Hero, Jr., as liquidating commissioners of the Louisiana Savings Bank and Safe Deposit Company, began an action in the then Fifth District Court for the parish of Orleans against Edward Conery for the recovery of a large sum of money.

In December following the defendant filed certain exceptions which, in June, 1880, were overruled, and a default entered. Defendant asked and obtained further time in which to make answer, and on July 6, 1880, filed a peremptory exception of no cause of action, a general denial, with reservation of the exception, and prayer for jury.

One month latter the court in which the action was pending ceased to exist, and the present Civil District Court became thereafter the tribunal in which such causes must be prosecuted to final results.

But no action whatever was taken by any party in interest in the case to do that which was necessary to cause the jurisdiction of the new court to attach. No motion was made to have the case transferred; the record was not taken from the custody of the city official and filed in the Civil District Court; no order and no appearance whatever was made or entered, or attempted, in the new tribunal.

The situation remained thus from the time (August 1, 1880) when the old Fifth District Court was abolished down to April 1, 1887, a period of nearly seventeen years, when an attempt was made to transfer the case to the Civil District Court. The cause itself was then only a memory. The record had disappeared, was lost and could not be found, and of the four original parties to the suit—three plaintiffs and one defendant—all were dead save one.

On the day last mentioned, counsel representing Andrew Hero, Jr., surviving liquidating commissioner of the Savings Bank, and sole survivor of the parties to the suit, appeared in the Civil District Court, suggested that this suit was instituted in the former Fifth District Court, that issue had been joined, that all the parties had died save himself, and that he alone now represented the bank. He

averred that William H. Byrnes was the legal representative of
Edward Conery, deceased, and asked that he be made party defend-
ant, and that the case be placed upon the docket and assigned for
trial.

On the same day he filed a second plea suggesting that the record
of the case was lost, and took a rule on Byrnes, administrator of
Conery, deceased, to show cause why the lost papers should not be
substituted by copies, and a record made up.

The administrator, appearing only for that purpose, filed an excep-
tion to the proceedings taken, or any other looking to the revival of
the cause, on the ground that the Fifth District Court having been
abolished, and no effort having been made to remove the case to the
Civil District Court for a period of more than sixteen years, the
cause itself had abated, been abandoned and perished; and he
pleaded against the proceedings and demand of plaintiff the pre-
scription of one, two, three, four, five and ten years. He averred
that the laches of plaintiffs had disentitled them to proceed with the
cause, and that it would be grossly unjust and inequitable for any
proceedings to be allowed, the defendant having died two months
before the effort to resurrect the case was made, and his testimony
not being obtainable.

This exception was maintained, the rule discharged and the pro-
ceedings dismissed. Plaintiff appeals.

His counsel presents in argument and brief this: " That the sole
question to be determined is: Does Article 21 of the Code of Prac-
tice state the law governing the case, it being proved and admitted
the deaths occurred between the plaintiffs on the one side and defend-
ant on the other, *after issue joined.*" (Italics his.)

We have given careful consideration to the reasoning advanced in
support of his case, but have not been able to concur in his view of it.

Our conclusions are that Art. 21 of C. P. does not apply. It is not
a question of the abatement, *vel non,* of the action by the death of one
of the parties.

The question is, is this action to be considered as having been
abandoned, has this suit legally perished by the long lapse of time,
has the breath of life been suffered to go out of it entirely by the
neglect and laches of the parties thereto?

This question would be equally pertinent were all the original
parties alive at this time. It may be conceded that if the suit could,.

under the circumstances here presented, be revived were Conery alive, so it may be now that he is dead. The question presented is, therefore, more far-reaching than any covered or contemplated by C. P. 21.

We pass no opinion of what would be the effect of permitting a cause to remain absolutely dormant during seventeen years *in an existing court.* It is not necessary in this proceeding to decide whether such action could be revived and proceeded with, or not; whether it had perished by abandonment, or not; whether it was prescribed against, or not. It suffices, in the instant case, that the suit under consideration has not existed as *an actuality,* a veritable action or cause, upon the docket of any court for the last seventeen years. It had been filed in a court that had existence, but which, nine months later, ceased to exist, from which time to April 1, 1897, nothing whatever was done to keep it alive, to give it the semblance of reality, of tangibility, by transferring it to another court capable legally of receiving it. It has been permitted to die from sheer inanition, to perish from exhaustion; three of the original parties have died along with it; and this attempt to revive it in another court, after seventeen years have passed, might be likened to an effort to galvanize a corpse.

The long abandonment of this case, failing to exercise the rights of the action after filing the suit, permitting the papers constituting its record to remain among the archives of a defunct court in the hands of a custodian not an officer of any court until lost, can not reasonably be viewed in any other light than as a practical discontinuance of the action. C. C. 3519, 3551, 3530; C. P. 491.

And this effort now to revive in an existing court of appropriate jurisdiction is tantamount to the bringing of the action anew after its discontinuance (C. P. 492), and the prescriptions applicable to such action must be considered as having not been interrupted. C. C. 3519, 3551.

The demand must certainly, under the facts of the case, be considered as having been voluntarily and intentionally abandoned, and prescription not interrupted. Elliott vs. Brown, 13 An. 579; Wilson vs. Marshall, 10 An. 327.

Under Art. 2247 of the Code Napoleon, the interruption of prescription is considered as not having occurred if the plaintiff discontinue his demand, or *fail to prosecute his suit.* Art. 3519 of our

11

Revised Civil Code, while not a literal copy of Art. 2247 of the Napoleonic Code, is its reproduction substantially. The article of our Code uses the word "abandons" for "if he fail to prosecute," as found in the other Code. The language of the French text is: "S'il laisse périmer l'instance." So that "abandons," as used in the article of our Code, may reasonably be construed, so far as applicable to the facts of the case, as having the meaning of *failing to prosecute*.

Judgment affirmed.

MILLER, J., recused.