LOTTINGER, Judge.
This suit arises out of windstorm damage to plaintiff’s home which occurred on September 19, 1947. At the time of the storm the plaintiff held a policy of fire and extended coverage insurance issued by the defendant on the said property, which is located in the town of Amite, Louisiana. In this action the plaintiff alleges that the cost of repairing the damage amounted to the sum of $1695.75, which he seeks to recover together with 12% interest and 20% attorney fees.
The suit was filed on September 28, 1948, and the defendant first filed an exception of prescription on the following grounds:
“1. That the storm herein and the loss complained of occurred on the 19th. day of September, 1947.
“2. That consequently the' plaintiff’s demands are prescribed by the prescription of one year, which exceptor especially pleads in bar of judgment herein.”
This exception was overruled by the lower court and subsequently the defendant filed another exception based on the following grounds:
“1. That as will appear from the petition herein, the loss complained of occurred on the 19th. day of September, 1947 ; that it appears on the face of the record that suit herein was filed on September .28, 1948, and that accordingly the plaintiff’s cause of action has been prescribed, outlawed, limited or nullified by the time limit for the bringing of action prescribed by the legislature of Louisiana for the year 1944 by Act No. 251 and exceptor specially pleads said statute and said statutory limitations in bar of judgment herein.
“2. That plaintiff’s petition does not state a right or cause of action.”
This exception was overruled also and the defendant then filed an answer in the form of a general denial. After trial on the merits the lower court rendered judgment in favor of the plaintiff in the sum of $800 together with 12% interest and 20% attorney fees. This defendant has perfected an appeal to this court which the plaintiff has answered asking that the judgment appealed from be increased to the sum of $1695.75, together with interest and attorney fees as originally prayed for.
*340 The first point to he disposed of is the exception of prescription. The ap-pellee contends in brief that this matter cannot now he urged as the first exception was properly overruled because it did not state the particular prescription relied on and the second exception was merely an attempt to cure the defects of the first. Assuming that plaintiff is correct in his contention that the first exception was insufficient, we are of the opinion that the second exception was properly drawn and timely filed.' Prescription being a peremptory exception founded on law, it may be pleaded at any stage of the proceeding, even' on appeal, prior to definitive judgment. C.P. Arts. 345, 346, and 902.
The real issue presented is whether or not the plea of prescription is" good. As will be seen from the exception quoted above, it is based on the provisions of Section 6 of Act No. 251 of 1944 (the law in effect at the time the cause of action arose), which provides in part as follows: “Suit — No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the 'requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.”
The above provision is, of.course, contained in the policy sued on. Counsel for defendant, in support of his plea, states that such a, provision, is a mandatory requirement of law and that our courts have no alternative 'but to enforce it as written. Counsel for plaintiff, on'the other hand, relies on the additional provision of Section 6 of Act No. 251 of 1944, which read as follows:
,. “Requirements- in case loss occurs— The insured shall give immediate written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed; and within sixty days after loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss, signed and sworn to by the insured, stating the knowledge and- belief of the insured as to the following: * * *
“When loss payable — The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment.of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided.”
From the section of the act just quoted it will be seen that the proof of loss must be rendered within sixty days and that the amount of loss is payable sixty days after the proof of loss has been received by the insurer and the loss ascertained. The plaintiff contends that these provisions should be considered together with the 12 months prescription section and that when thus construed together prescription does not begin to run until the cause of action has actually accrued, i. e., sixty days after the filing of the proof of loss.
From our examination of the jurisprudence it does not appear that our Louisiana courts have passed upon this precise point. Counsel for defendant has referred us to the case of Guccione v. New Jersey Insurance Co. of Newark, N. J., La.App., 167 So. 845, 848, wherein the Orleans Court of Appeal made the following observation with régard to a similar -provision : “From the foregoing, it will- be seen that the provision of the policy requiring suit to be brought within twelve months after the fire is valid, and, in the instant case, unless the first suit brought by plaintiff and her husband against defendant company interrupted prescription, the exception is well taken.”
A reading of this titled case, however, shows that it is not controlling here as the fire occurred on February 1, 1932 and the cited suit was not filed until January 19, 1934. No argument was or could have been made as to the point raised here due to the length of time which elapsed between the time of the fire and the time of bringing suit.
In Volume 29 of American Jurisprudence at 1043, § 1397, we find the following: *341 "There is sharp conflict in the case? on the question when the time begins to run within which a suit is required to be brought under the usual policy provisions. It is usually provided that the insurer shall have a certain time within which to pay the loss, postponing the time.of payment, and that no action shall be sustained unless commenced within a certain time. Whatever may be the term employed in the latter provision, whether it is within a certain time “after loss”, “After the fire”, or “after death”, many courts hold that the provision for immunity from suit and the one of limitation must be construid together and that the period of limitation does not begin to run until the loss ^payable and an action might be brought against the insurer. Other courts hold that the provision limiting the time of suit must be given effect and that the time begins to run at the time the loss actually occurs.”
To our minds the answer to the question hinges on the interpretation of the term “inception of loss” as contained in the.statute and policy. The only specific authority which, we find on this point is in Words and Phrases, Vol. 20, which reads as follows :
“Inception of. Loss. Where . standard fire policies to which were attached extended coverage endorsements including loss or damage caused by windstorm, pro-; vided that suit must be commenced within 12 months next after the "inception of the loss”, suit for damage caused by hurricane was required to be brought within 12 months after the damage caused by the hurricane occurred, rather than 12 months after claim was presented’ by service of proofs of loss. Margulies v. Quaker City Fire & Marine Ins. Co., 276 App.Div. 695, 97 N.Y.S.2d 100, 104.”
There being no Louisiana cases specifically in point as pointed out previously, we feel the above quoted áuthority to be controlling. Furthermore, according to 42 C.J.S., p. 501, “inception” is defined as a word meaning initial stage; commencement; opening; initiation; origin. Further in the case of Green v. Peoples Benevolent Industrial Life Insurance Co., La. App., 5 So.2d 916, 917 dealing with a life insurance and sickness and accident benefit policy, the court said: “Stipulations whereby parties to a contract of insurance fix a definite delay before any action will lie to enforce rights devolving under its provisions and/or a definite period within which a suit thereon must be filed, when not contrary to express law, have been generally held to be binding on the con-tractants and their successors and/or heirs, and are enforced as written. Such stipulations emanate from the parties themselves and form and become an integral part of the contract and should not be ignored in determining the timeliness of actions by the insured or the beneficiary thereunder. Simply stated, the parties provide their own rule of limitations. Cooley’s Briefs on Insurance, Vol. 7, page 6800, et seq; 29 Am. Jurisprudence, 1039; 23 A.L.R., page 98.”
Accordingly, the twelve month prescriptive period, commenced running as of the date of damage and the instant suit was filed after the twelve months had elapsed. The plea of prescription must therefore be sustained.
For the reasons assigned the judgment appealed from is reversed and set aside a.nd the plaintiff’s suit dismissed at his cost.
Judgment reversed.