**Edwin ANDRY, Plaintiff,**

v.

**MARYLAND CASUALTY COMPANY,**
**Defendant.**

**Civ. A. No. 13268–B.**

United States District Court
E. D. Louisiana,
New Orleans Division.

July 8, 1965.

George J. Garzotto, Sternfels, Raphael & Garzotto, New Orleans, La., for plaintiff.

Ralph L. Kaskell, Jr., John F. Tooley, Jr., Deutsch, Kerrigan & Stiles, New Orleans, La., for defendant.

FRANK B. ELLIS, District Judge.

This medical malpractice action against a doctor's insurer, based on diversity of citizenship, entangled plaintiff in a web of Louisiana prescription rules. The law prevents extrication.

*I. Introduction*

On or about August 5, 1960, the plaintiff, Edwin Andry, was treated at a local

hospital by three doctors in an allegedly negligent manner. Within a year two lawsuits were filed, one in State Court and the other in Federal Court. The State Court case, No. 393–231, on Docket 4 of the Civil District Court for the Parish of Orleans, named as defendants the hospital, its insurer, and the three doctors who treated plaintiff. The Federal Court case named only the hospital's insurer as defendant, but alleged that those doctors were in fact agents of the hospital at the time of their acts.[1]

The instant suit was then filed solely and directly against Maryland Casualty Co., insurer of one of the three doctors, on March 21, 1963, some thirty-one months subsequent to the alleged acts of malpractice and nineteen months after the applicable prescriptive period would normally have expired except for the interruption of prescription created by the filing and pendency of the State Court Action against this defendant's assured.[2] The State Court case advanced toward trial more rapidly than either of the two federal cases, and when trial was imminent in the State proceeding, counsel for plaintiff filed a motion there to dismiss that case without prejudice and suggested that plaintiff desired instead to proceed with the Federal Court

case. On February 4, 1964, Judge Clarence Dowling signed the order dismissing the State Court case.[3]

Thereafter, counsel for Maryland Casualty Co. filed the motion for summary judgment presently before this Court asserting that as a matter of law when plaintiff voluntarily dismissed the State Court case, the only case naming its assured as a defendant, the interruption of prescription that was effected by the filing and pendency of that action became a nullity and further rendered the instant cause of action against this insurer prescribed under the plain language of LSA–Civil Code, Art. 3519, which dictates that prescription shall not be considered as having been interrupted whenever a plaintiff "voluntarily dismisses" a case. The issue requiring determination here is whether plaintiff's dismissal of the State Court case without prejudice is a voluntary dismissal within the meaning of Article 3519.

 Being an action founded on diversity of citizenship jurisdiction, 28 U.S.C.A. § 1332(a) (1), this Court is bound by Louisiana substantive law, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and by Louisiana procedural law which is "out-

1. Edwin Andry v. Argonaut Ins. Co., CA No. 11361 in the United States District Court, Eastern District of La., Div. B, filed August 4, 1961.

2. The Louisiana Direct Action Statute, LSA–Rev.Stat. 22:655, creates a substantive right in favor of an injured party against the insurer of the tortfeasor when an accident occurs in Louisiana. Causes of action arising on or prior to August 14, 1964, in which the plaintiff and the insurer were citizens of different states permitted suit to be commenced in Federal Court on the basis of diversity. 28 U.S. C.A. § 1332(a) (1) and (c). The 1964 amendment to § 1332(c) severely limits the instances wherein diversity will still exist since it now provides that as to all causes of action arising after enactment, August 14, 1964, the "insurer shall be deemed a citizen of the State of which the insured is a citizen," as well as the place of incorporation and the principal place of business. Pub.L. 88–439, § 1; 78 Stat. 445; 28 U.S.C.A. § 1332(c). Since the

cause of action here arose prior to the effective date of the amendment, diversity exists.

3. In support of its motion for summary judgment, defendant has filed into the record a certified copy of the motion and order dismissing plaintiff's state court case, No. 393–231, without prejudice:
"On motion of plaintiff, appearing herein through his attorneys of record, and upon suggesting to the Court that this matter is the subject of another suit in the United States District Court for the Eastern District of Louisiana, New Orleans Division, and will be resolved by the trial of the cause in that court, and upon further suggesting that this petition should be dismissed without prejudice,
"IT IS HEREBY ORDERED that the above and foregoing and entitled action be and the same is hereby dismissed without prejudice, at plaintiff's cost."

come determinative", Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), so long as that procedural law is not in conflict with the Federal Rules of Civil Procedure, Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Since there exists no federal rule of limitation in opposition to the Louisiana laws of prescription here applicable, this case turns on State law. See Guaranty Trust Co. of New York v. York, 326 U.S. 99, 165 S.Ct. 1464, 89 L.Ed. 2079 (1945).

█ It is now settled in Louisiana that actions alleging medical malpractice sound in tort and hence are governed by the one-year prescription applicable to "offenses or quasi offenses." LSA–C.C. Art. 3536.[4] See Phelps v. Donaldson, La.App., 142 So.2d 585 (3 Cir. 1962) affirmed 243 La. 1118, 150 So.2d 35 (1963); and Scott v. Board of Supervisors of LSU, 336 F.2d 557 (5 Cir. 1964). The original state court case, docketed on August 4, 1961, was therefore timely filed.

█ The timely filing of suit in a court of competent jurisdiction constitutes a legal interruption of prescrip-

tion,[5] and when an insured is sued the interruption also applies to the cause of action against the insurer since in Louisiana there exists solidary liability on the part of the insurer.[6] The foregoing statement of generally recognized Louisiana law indicates that when this suit was instituted against the doctor's insurer more than thirty-one months after the date of the alleged malpractice, it was timely filed and not prescribed only because the filing and pendency of the State Court case effected a continuing interruption of prescription. The effect of plaintiff's voluntary state court dismissal in relation to that interruption is the focal point of defendant's motion here.

*II. The Code*

The Louisiana Civil Code presently states that a plaintiff's voluntary dismissal of a case renders the interruption of prescription a complete nullity.[7]

"Art. 3519. If the plaintiff in this case, after having made his demand, abandons, voluntarily dismisses, or fails to prosecute it at the trial, the interruption is considered as never having happened." [8]

4. Art. 3536. The following actions are also prescribed by one year: "That for * * * damages * * * resulting from offenses or quasi offenses * * *"

5. LSA–Rev.Stat. 9:5801, originally adopted as Acts 1932, No. 39, states: "All prescriptions affecting the cause of action therein sued upon are interrupted as to all defendants * * * by the commencement of a civil action in a court of competent jurisdiction and in the proper venue. * * *"

6. LSA–Rev.Stat. 22:655, the Louisiana "Direct Action" statute, classifies the insurer's obligation as solidary with that of its insured: "* * * and said [direct] action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido * * *" LSA–C.C. Art. 2097 completes the syllogism by providing the minor premise that "[a] suit brought against one of the debtors *in solido* interrupts prescription with regard to all." See Hum-

phreys v. McComiskey, La.App., 159 So.2d 380 (4 Cir. 1964).

7. The one-year limitation on tort actions is liberative prescription. LSA–C.C. Art. 3536. Article 3519 appears in the Section of the Code concerned with acquisitive prescription. However, by construction with Article 3518 "in pari materia", it has repeatedly been held that Article 3519 applies equally to the rules governing liberative prescription. White v. McQuillan, 12 La. 530, 534 (1838); Teutonia Loan & Building Co. v. Connolly, 133 La. 401, 63 So. 63 (1913); Westmoreland v. Gordons Transports, Inc., Civil Action No. 11988–D, (U.S.D.C., E.D.La.1962).

8. LSA–C.C. Art. 3519 as amended, Acts 1954, No. 615, § 1; Acts 1960, No. 30, § 1. The 1954 amendment is irrelevant to the matters at issue here and involved the procedural treatment of "abandonment" while a case was pending on appeal. See 15 La.L.Rev. 43–44 (Dec. 1954). This 1954 amendment and an 1898 amendment concerning the procedural definition of "abandonment" were transferred in 1960 to Article 561 of the Code of Civil Pro-

Prior to an amendment enacted by the Legislature in 1960, the phrase "abandons or discontinues it" appeared instead of the present term "abandons, voluntarily dismisses, or fails to prosecute it at the trial." [9] This Court has not been cited to any jurisprudence or legislative history interpretive of the newly adopted phraseology. It therefore becomes incumbent upon the Court to analyze the article's underlying policy in order to determine the meaning of the term now employed.

The original source of Article 3519 is the French Civil Code of 1804 (Code Napoleon), Article 2247:

"If the summons is null by defect of form,

"If the plaintiff discontinue his [demand] suit,

"If he allows the suit to fall for want of prosecution,

"Or if his suit is dismissed,

"The interruption is considered as having never happened."

Some insight to the meaning of that article is provided by Planiol in his authoritative commentaries on the French Civil Code:

"2691. Case where Suit Fails

"*The suit* that has interrupted prescription does not always have a definitive effect. The interruption of prescription subsists only where the demand is maintained and held to be well founded by the Court. Therefore, *all the causes that would cause the suit to fall, will wipe out with it the interruption of prescription.*

cedure. See "Summary of Procedural Changes in Chapter 4" of the Code of Civil Procedure preceding Article 561 therein.

9. The pre-1960 amendment form of Article 3519 is quoted in the text below at note 12, infra.

"These causes, enumerated in Art. 2247, are the following:

\* \* \* \* \* \*

"(2) WHERE PLAINTIFF DESISTS FROM HIS DEMAND

"Desistance, governed by Art. 402 and 403 of the Code of Civil Procedure, is the abandonment of *the procedure*; it is not a renunciation on the merits, or as regards the legal rights involved. It therefore does not prevent the renewal of the action. But the procedure that had been begun is deemed to be of no effect and consequently prescription is not considered to have been interrupted.

"(3) WHERE SUIT LAPSES. "Peremption takes place when a suit is discontinued for three years, without the performance of an act of procedure. But peremption does not take place by operation of law. It has to be asked for by the adverse party (Arts. 397, 399 and 400 of the Code of Civil Procedure). Peremption of *the suit* is equivalent to a desistance. It is the abandonment of the procedure. It has the same effect as a desistance. \* \* \*" (Emphasis added.) 1 Planiol, Traite Elemtaire de Droit Civil, No. 2691, English Translation, Planiol, Civil Law Treatise, Vol. 1, Part 2, No. 2691, pp. 590–591 (La. State Law Inst. 1959).[10]

Several pertinent observations can be gleaned from the above quoted commentary. Initially it should be noted that the basic concept relating to nullification of the interruption becomes operative under both codes upon the occurrence of the respective stated conditions.

10. The parenthetical numeration used by Planiol corresponds to the respective clauses of Article 2247. The other two paragraphs of the commentary are headed: "(1) Where the summons is annulled for want of form," and "(4) Where demand is rejected." Planiol noted that the first was extremely harsh and that No. 4 was really unnecessary.

Secondly, it is likewise evident that the codes and commentary are referring to desistance or abandonment of a particular "lawsuit" as distinguished from the more comprehensive concept of a "cause of action." References to the less inclusive legal term "suit" are expressly found in three of the four clauses enumerating the conditions of Art. 2247, and the other clause speaks of the "summons" which in turn implies relation to an individual lawsuit. Those portions of Planiol's commentary making specific reference to "the procedure" and "the suits" have been emphasized above by this Court. An elementary grammatical analysis of the present article 3519 reveals that the conditions set forth all modify "this case". There is thus complete unanimity supporting the proposition that Article 3519 becomes operative when a particular legal action, the individual lawsuit, is by plaintiff abandoned, voluntarily dismissed, or not prosecuted at trial. Moreover, the basis for recognizing a distinction between the particular "suit" and the broader "cause of action" on which the suit is based is further heightened by Planiol's observation that plaintiff's desistance "is not a renunciation on the merits" or of "the legal rights involved," and "therefore does not prevent a renewal of *the action*." [11] Hence, on that basis there appears to exist no legal impediment to the full application of Article 3519 when a plaintiff voluntarily dismisses a particular lawsuit even though plaintiff at the same time clearly evinces an intent to reserve all other rights he may have as to that cause of action.

A third observation relates to the possible recognition of a difference between a discontinuance and an abandonment. While there exist distinctions, it is submitted that there is no substantial difference. While each is treated in separate clauses and paragraphs in Article 2247 and by Planiol, each provokes application of the rule in distinct ways, the discontinuance automatically by operation of law [12] as opposed to the abandonment only when "asked for" and proved by the adverse party.[13] And each bears contradistinguishing connotations of active objectiveness as to discontinuance and passive subjectiveness as to abandonment. In the sense that an active discontinuance evidenced by a motion to dismiss, for instance, also evinces an intent to abandon that lawsuit, there is no substantial difference from the intent which the adverse party must prove by circumstantial evidence or legal presumption in order to show a passive abandonment of the suit. The objective act of the plaintiff proves the intent on the one hand; the circumstances and presumptions prove the same intent on the other. Thus, the only difference resolves itself to a procedural one involving the method of proof. See Lockhart v. Lockhart, 113 La. 872, 37 So. 860 (1905). Relative to Planiol's commentaries on the same provisions of Article 3519 and the issue under consideration we find that the nullification of prescriptive interruption has remained basically unchanged, that the nullification is triggered by the lawsuit, rather than the cause of action, being discontinued or abandoned, and that no substantial difference exists between a discontinuance and an abandonment.

In the Louisiana Civil Code of 1808 no provision corresponding to Article 2247 of the Code Napoleon was included. The 1825 Civil Code, however, contained Article 3485 which included a provision the same as Article 3519 of the 1870 Revised Civil Code. This provision then remained unchanged in both form and substance until the legislature in 1960 enacted the above described amendment. Prior to the 1960 amendment, the rele-

11. Planiol, supra, No. 2691 (2) [emphasis added].

12. Ibid. "[T]he procedure that had been begun is deemed to be of no effect."

13. Id., No. 2691(3). Peremption "has to be asked for by the adverse party * * *."

vant portions of the article read as follows:

> "Art. 3519. If the plaintiff in this case, after having made his demand, *abandons or discontinues it*, the interruptions shall be considered as never having happened." [14] [Emphasis added]

Planiol's commentaries on Article 2247 of the Code Napoleon and this court's observations are especially apropos to Article 3519 in its pre-1960 amendment form since the article retains the same basic concept, applies to the particular case without reference to the overall cause of action, and contains the abandonment-discontinuance dichotomy. The Louisiana Supreme Court has laid to rest any doubt that Article 2247 and Article 3519, as it read prior to 1960, were not substantially identical:

> "Article 3519 of our [1870] Revised Civil Code, while not a literal copy of article 2247 of the Napoleonic Code, is its reproduction substantially." Raymond v. Conery, 50 La.Ann. 155, 162, 23 So. 208, 210 (1898).

### III. The Jurisprudence

The earliest reported judicial interpretations of the matter generally at issue here involved the application of the 1825 Civil Code's Article 3485. In Harrison v. Meyer, 22 La.Ann. 580 (1870) affirmed 92 U.S. 111, 23 L.Ed. 606 (1875), the plaintiff brought suit to recover rents and shortly thereafter voluntarily discontinued that suit. Subsequent to the expiration of the appropriate prescriptive period, plaintiff instituted a second suit to recover the same rents, alleging that the filing of the prior suit had interrupted prescription and that he had no intent to "abandon" that suit but was instead compelled to do so by military orders. In rejecting plaintiff's contentions the court mechanically applied Article 3485 regardless of intent on a finding that it was a voluntary discontinuance.

> "The discontinuance was voluntary and the suit therefore did not have the effect to interrupt the current of prescription. C.C. 3485." 22 La. Ann. 580.

To the same effect, especially in regards the irrelevance of intent, are Smith v. Gibbon, 6 La.Ann. 684, 687 (1851); and Dennistoun v. Rist, 9 La.Ann. 464, 465 (1854).[15]

This principle that the intent is irrelevant when it stands apparent the suit was voluntarily discontinued was succinctly stated by Chief Judge Bermudez in Davis v. Young, 35 La.Ann. 739 (1883):

> "There exists no essential difference between a discontinuance and a voluntary non-suit. A suit in which plaintiff is non-suited, on motion of his counsel, does not interrupt prescription, whatever the intention may appear to the contrary. A voluntary non-suit is equivalent to an abandonment. R.C.C. 3485 [sic] Dennistonn [Dennistoun] v. Rist, 9 [La.] An. [Ann.] 464; (Smith v. Gibson [Gibbon]) 6 [La.] An. [Ann.] 684." 35 La.Ann. at p. 740.

At that time, then, the principle appeared to constitute a generally accepted

14. The 1898 and 1954 amendments to Article 3519 are here omitted. See Note 8, supra, for a brief discussion of those amendments which are now contained in LSA–C.C.P. Art. 561.

15. There is language in Dennistoun v. Rist which can be construed to indicate that where a plaintiff voluntarily dismisses but reserves the right to file another suit based on the same course of action, then the interruption will not be nullified. See Guccione v. New Jersey Ins. Co. of Newark, N. J., La.App., 167 So. 845, 849 (Orleans 1936). The Guccione case is discussed more fully in a subsequent part of this opinion. It is only desired here to point out that in Dennistoun v. Rist the court did not hold that an intent to further prosecute the cause of action rendered the codal article inapplicable. To the contrary, in holding that the prescription interruption was nullified, the Court recognized that the record contained indications that plaintiffs did in fact intend to renew their claim, and completely disregarded those indications as irrelevant.

and recognized interpretation of the pertinent codal article.[16]

A consistent line of Louisiana Supreme Court decisions maintained this proposition that a voluntary dismissal rendered the interruption of prescription an absolute nullity. In Screen v. Trainor, 172 La. 51, 133 So. 359 (1931) that court said:

"It is well established that the dismissal of a suit on the motion of the party bringing it, which is a voluntary dismissal, does not have the effect of interrupting prescription. The situation thereafter remains the same as if the suit had never been brought." 133 So. at p. 362.

See Cassou v. Robbert, 166 La. 101, 116 So. 714 (1928); Losch v. Greco, 173 La. 223, 136 So. 572 (1931); Shepard Realty Co. v. United Shoe Stores Co., 193 La. 211, 190 So. 383 (1939). See also Depetro v. Mitchner, 18 La.App. 290, 138 So. 466 (1 Cir. 1931).

Another line of cases interpreting Article 3519 further tends to negate any idea that the intent of the dismissing party, either impliedly or by express reservation of right, affects the operation of Article 3519. The theory espoused here is that the dismissal of a given lawsuit while obviously terminating that suit and negating the prescriptive interruption by operation of Article 3519,

"does *not* affect the cause of action and constitutes no bar to a subsequent suit on the same cause of action." (Louisiana citations and supporting quotation omitted), Wright v. Lumbermen's Mutual Casualty

Co., 242 F.2d 1, 3 (5 Cir. 1957), cert. denied 354 U.S. 939, 77 S.Ct. 1397, 1 L.Ed.2d 1536.

In addition to the Louisiana authorities relied upon therein, see Neal v. Hall, La.App., 28 So.2d 131 (2 Cir. 1946) and Anthon v. Knox, La.App., 155 So.2d 53, 56 (1 Cir. 1963). The significance of this legal principle to the issue under consideration is that each and every time a plaintiff voluntarily dismisses a particular lawsuit he is deemed, in law, to have reserved his rights to further prosecute the same "cause of action" in another lawsuit, provided, of course that the cause of action has not already prescribed.[17] All that Article 3519 interjects at that point is to prevent the plaintiff from extending the life of the cause of action by not permitting the voluntarily discontinued lawsuit to work the legal interruption of prescription which the filing of that suit would otherwise have effected.[18] The purpose of Article 3519 is stated to be the prevention of harassment. Sanders v. Luke, La.App., 92 So.2d 156 (1 Cir. 1957).

Moreover, this recognized distinction between the "lawsuit" and the "cause of action" lends further support to this court's second observation on Planiol's commentaries that the code itself indicates an intent on the part of the redactors to create and perpetuate such a distinction. Thus the Code and the jurisprudence interpretive thereof are clearly in harmony.

The only maverick decision appearing to be out of stride with the foregoing analysis, and understandably the case relied on here by plaintiff, is Guccione v.

16. The Court in the Guccione case, supra, note 15, considered the quoted language from Davis v. Young to be dicta. While it may have been dicta in Davis v. Young, the statement there was extremely strong dicta indicative of a generally recognized legal principle.

17. And provided of course, that the dismissal is "without prejudice" as indicated in LSA–C.C.P. Art. 1673. The same Article provides that a dismissal "with prejudice" has the "effect of a final judgment" and

hence would directly affect the cause of action.

18. In situations where the applicable prescriptive period is 3, 5, or 10 years, the problems posed by an application of Article 3519 will be relatively less important than those instances where one-year prescription applies. Since Louisiana public policy and LSA–C.C. Article 3536 render tort actions prescribed in one year, the interposition of Article 3519 becomes critical, as demonstrated by the case at bar.

New Jersey Ins. Co. of Newark, N. J., La.App., 167 So. 845 (Orleans 1936). There the plaintiff's house burned and suit was filed to recover damages under the terms of the fire policy issued by defendant covering those premises. On the day of trial plaintiff's counsel learned that the property was in fact the separate property of Mrs. Guccione so that the complaint stating it to be community property was technically in error. He immediately dismissed that suit without prejudice to file another suit. When the second suit was filed more than a year after the cause of action accrued, defendant's exception based on Article 3519 was denied on grounds that the term "discontinues" was the legal equivalent of the term "abandons" and that by expressly reserving the right to file another suit plaintiff evidenced an intent to not abandon the "cause of action." 167 So. at p. 849. Several of the cases cited above were distinguished.[19]

Plaintiff's reliance here rests on language in the Guccione case that Article 3519 does not become operative when in dismissing a suit without prejudice there is demonstrated an intent to further pursue the cause of action in another suit. The precedent value of the Guccione case is materially weakened by the fact that in almost thirty years the decision has been cited expressly in only five cases that this court could locate, and of those five cases, two were concerned with matters not at issue here.[20] In each of the other three instances the Guccione case was considered either "distinguishable" or "not controlling."[21] Hence no reported case has followed the holding in Guccione.

Should the identical issue raised in Guccione face the Louisiana Supreme Court it is doubtful that the same result would be reached. Not being a common law jurisdiction, the effects of "stare decisis" would be minimized. The civilian tradition places prime importance on analysis and interpretation of the code and then considers the jurisprudence relating thereto tangentially. This court has attempted such an analysis by first making three observations interpretive of the codal article at issue, and then secondly, by determining that the jurisprudence relating thereto recognizes and supports those observations. In this regard, it is submitted that the Guccione case comports with only two of those observations, that is, the court there recognized the remaining vitality of the basic concept inherent in Article 3519, and also concluded that there existed no substantial difference between an abandonment and a discontinuance. The point of departure stems from this court's second observation above, relative to the distinction between a "suit" and a "cause of action." The court in Guccione held that Article 3519 did not become operative when plaintiff voluntarily discontinued the case and reserved

"his rights to pursue the cause of action further." (Emphasis added.) 167 So. at p. 849.

As discussed above, there is little doubt that the "cause of action" is not directly affected by a voluntary discontinuance and the resultant operation of Article 3519.[22] The intent to abandon or discontinue the "cause of action" *vel non* is hence irrelevant to an application of Article 3519, for, as we have seen, the

---

19. See Notes 15 and 16, supra.

20. Dutton v. Harmonia Ins. Co. of Buffalo, N. Y., 191 La. 72, 184 So. 546, 550 (1938); and Green v. Peoples Benev. Industrial Life Ins. Co. of La., La.App., 5 So.2d 916, 917 (2 Cir. 1941).

21. Shepard Realty Co. v. United Shoe Stores Co., 193 La. 211, 190 So. 383, 388 (1939); Lunkin v. Triangle Farms, Inc., 208 La. 538, 23 So.2d 209, 211 (1945); Finkelstein v. American Ins.

Co. of Newark, N. J., La.App., 58 So.2d 338, 340 (1 Cir. 1952). The Guccione case has also been mentioned in three law review articles: 12 Tul.L.Rev. 134 (Dec. 1937); 14 Tul.L.Rev. 610–611 (June 1940); and 22 Tul.L.Rev. 506 (March 1948) [criticizing the "dubious reasoning" employed in the Guccione case, at n. 8].

22. Wright v. Lumbermen's Mutual Casualty Co., supra.

cause of action is not abandoned under Article 3519 by a voluntary discontinuance. What stands at issue for Article 3519 to operate is whether there has been a voluntary discontinuance of the particular lawsuit. It appears obvious that counsel for Mrs. Guccione did in fact voluntarily discontinue the first suit. That in itself should have triggered Article 3519. The result of an automatic application of Article 3519 there would undoubtedly have worked a severe hardship on plaintiff. It was a hard case.

The instant suit is an equally difficult case. The United States Court of Appeals for the Fifth Circuit was recently invited to make bad law in a hard case and declined the invitation.[23] This court must here likewise decline the invitation by following the code instead of the Guccione case.

Even if vitality still flickered in that case prior to 1960, the legislature effectively snuffed out the flame by its amendment to Article 3519. Since the jurisprudence, as well as the Guccione case, had equated "abandonment" and "discontinuance", the latter term was omitted and the term "voluntarily dismisses" was added. Only one prior decision had defined voluntary dismissal in light of Article 3519, and the legislature must be presumed to have adopted that interpretation since there are no contrary indications. That definition is quoted above from Screen v. Trainor[24] and indicates,

> "that the dismissal of a suit on the motion of the party bringing it, which is a voluntary dismissal, does not have the effect of interrupting prescription."[25]

### IV. Conclusion

■ In summary, the historical development, purpose and interpretation of Article 3519 all indicate conclusively that when a suit is dismissed without prejudice on motion of the party bringing it, the cause of action is not ipso facto abandoned, but the interruption of prescription effected by that suit is nullified regardless of any implied or expressed intent to file a subsequent suit on the same cause of action. In that sense, here the plaintiff's dismissal of the state court case on February 4, 1964, was a voluntary dismissal within the meaning of Article 3519, and on that basis, the motion of defendant Maryland Casualty Co. is hereby granted.

It is so ordered.

23. McConnell v. Travelers Indemnity Co., 346 F.2d 219, (5 Cir. 1965) :
 "This hard case involving, for the plaintiff, disastrous effects from splitting his cause of action, is an invitation to make bad law. We decline the invitation." 346 F.2d at p. 220.

24. 172 La. 51, 133 So. 359 (1931).

25. Oddly, even though reported prior to the Guccione case, that decision did not cite or mention Screen v. Trainor.