**Charles J. BREAUX, Plaintiff,**

v.

**AETNA CASUALTY & SURETY COMPANY and Bristol Laboratories, Inc., Defendants.**

**Civ. A. No. 14509.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Aug. 18, 1967.

As Amended Sept. 29, 1967.

Charles F. Barbera, Mollere & Barbera, Metairie, La., for plaintiff.

Henry B. Alsobrook, Jr., Adams & Reese, New Orleans, La., for defendant Aetna Casualty & Surety Co.

Lloyd C. Melancon, McLoughlin, Barranger, West & Provosty, New Orleans, La., for defendant Bristol Laboratories, Inc.

BOYLE, District Judge:

The defendants move for summary judgment on the grounds, among others, that the plaintiff's suit was barred by the statute of limitations.[1] We grant the motions.

1. This is the second time these motions for summary judgment have been submitted for decision. On November 3, 1965, they were decided, contra to our holding, in another section of this Court. However, after reallotment of this case to this section (following an increase in the number of Judges on the Court) and in view of certain fact admissions of counsel elicited at a subsequent pre-trial conference, the motions have been re-urged. It is also urged that the complaint fails to state claims upon which relief may be granted, upon which, because of the result reached on the prescription issues, we do not pass.

Plaintiff, Charles J. Breaux, was hospitalized on October 7, 1958, presumably for a checkup. He had a history of gastrointestinal, as well as renal, difficulty. After several days in the hospital undergoing various tests, plaintiff developed a fever which, by October 21, 1958, was running so high, his physician, Dr. Goldman, the insured of defendant Aetna Casualty & Surety Company, administered a new and extremely potent antibiotic known as Kantrex, manufactured by defendant Bristol Laboratories, Inc. The drug was administered until October 29, 1958, at which time it was discovered that plaintiff had suffered a serious impairment to his hearing, namely, nerve deafness. Although plaintiff's fever subsided, attempts to flush the Kantrex from plaintiff's system failed to restore his hearing.

On May 1, 1964, plaintiff filed this suit against Aetna Casualty & Surety Company and Bristol Laboratories, Inc. He alleges that Bristol knew or should have known that Kantrex had dangerous propensities when administered to elderly patients (plaintiff was 49 years old at the time) with renal impairment, and that the drug was marketed with insufficient warning of the possibility of ensuing deafness. Plaintiff alleges that the doctor was negligent in administering the drug, which he knew or should have known would impair his patient's hearing.

The only questions raised by these motions, which we now consider and dispose of, are whether or not the claims against the defendants have prescribed. Since Federal jurisdiction in this case is grounded upon diversity, we must look to the law of Louisiana for the solution.

First treating the claim arising out of the alleged malpractice of the doctor, we must conclude that the prescriptive period applicable thereto is one year. The leading case standing as authority for this conclusion is Phelps v. Donaldson, 243 La. 1118, 150 So.2d 35 (1963). This case lays down the rule that a malpractice claim lies in tort, unless the defendant has entered into a contract warranting a particular result. Thus, unless the doctor has made such a guarantee, the prescriptive period applicable is one year under Article 3536 of the Revised Civil Code. In the case at bar, plaintiff's counsel concedes that no guarantee of particular results was given by the doctor, and that there existed the usual doctor-patient relationship.[2] Plaintiff himself admitted that no such guarantee was made.[3] The plaintiff's wife affirmed that no guarantee was made.[4]

In Kozan v. Comstock, 270 F.2d 839 (5th Cir., 1959), the Court in a well considered opinion held that a malpractice action against a physician prescribes in one year under Louisiana law. Judge Wisdom, as organ of the Court, wrote:

"It is the nature of the duty breached that should determine whether the action is in tort or in contract. To determine the duty one must examine the patient-physician relationship. It is true that usually a consensual relationship exists and *the physician agrees impliedly to treat the patient in a proper manner. Thus, a malpractice suit is inextricably bound up with the idea of breach of implied contract.* However, the patient-physician relationship, and the corresponding duty that is owed, is not one that is completely dependent upon a contract theory. There are instances in which the relationship exists though there is clearly no contractual relationship between the patient and the physician. Thus, the patient may be incapable of contracting or a third person may have contracted with the physician for the treatment of the patient. Even in these instances in which no contract is present the physician still owes a duty to the patient.

---

2. This concession was made at the pretrial conference held on June 6, 1967.

3. Deposition of Charles J. Breaux, August 2, 1965, pp. 9–10.

4. Deposition of Mrs. Charles J. Breaux, August 2, 1965, p. 20.

The duty of due care *is imposed by law and is something over and above any contractual duty.* Certainly, a physician could not avoid liability for negligent conduct by having contracted not to be liable for negligence. *The duty is owed in all cases, and a breach of this duty constitutes a tort. On principle then, we consider a malpractice action as tortious in nature whether the duty grows out of a contractual relation or has no origin in contract.* This view that malpractice suits are tortious in nature probably represents the majority view.

We do not mean to say that there can never be a contractual action against a physician. Generally, a physician undertakes only to utilize his best skill and judgment. When he negligently fails to do so he may have committed a tort. *However, a physician may, by express contract, agree to effect a cure or warrant that a particular result will be obtained. In such instances an action in contract may lie against a physician. However, in the absence of a special warranty or contract, a malpractice suit against a physician is an action in tort and is subject to the limitation period for tort actions."* (Citations omitted. Emphasis supplied. See pages 844, 845 of the case report.)

In Mills v. Doty, 116 So.2d 710 (La. App., 1959), the Court held that the one-year prescriptive period applied to an action against a chiropractor whose treatment caused injury.

Likewise, in Bresler v. Nugent, 134 So. 2d 694 (La.App., 1961), the Court, citing Kozan v. Comstock, supra, held that an action against a hairdresser whose negligent treatment of the plaintiff caused baldness sounded in tort rather than contract for the purposes of prescription, noting that the tort arose out of the "misperformance of a contract."

The plaintiff relies on the case of Brooks v. Robinson, 163 So.2d 186 (La. App., 1964), in support of his contention that the ten-year (contract) prescriptive period should be applied. However, it appears that the Court of Appeal in that case held that where a doctor does not perform at all, after agreeing to treat, rather than rendering some, but negligent, treatment, the patient's action lies in contract for purposes of the applicable prescriptive period.

Assuming, arguendo, that the *Brooks* case is, on legal principle, not in conflict with *Phelps,* it is, however, distinguishable on its facts from the case at bar. The case at bar involves the alleged negligent administration of a drug, and not, as in the *Brooks* case, the alleged failure of a doctor to act at all, after apparently assuming a duty to treat Brooks. Even if the Court of Appeal in *Brooks* sought to vary the rule set out in *Phelps,* supra, it would not be in keeping with the Louisiana jurisprudential system to follow one divergent Court of Appeal decision in the face of a Supreme Court decision and a long line of other Court of Appeal decisions to the contrary.

Additionally, plaintiff can find no comfort in the fact that the Supreme Court denied writs in Brooks v. Robinson, 246 La. 583, 165 So.2d 481 (1964), since such denial was premised upon the fact that there was no final judgment to be reviewed.[5]

The argument in support of applying *Brooks* is further diluted by the fact that cases decided subsequent thereto have followed *Phelps.* In the case of Springer v. Aetna Casualty and Surety Co., 169 So.2d 171 (La.App., 1964), the Fourth Circuit Court of Appeal applied the prescriptive period of one year to a malpractice claim. Also in Andry v. Maryland Casualty Co., 244 F.Supp. 143 (E.D.La., 1965), Judge Ellis wrote, "It is now settled in Louisiana that actions alleging medical malpractice sound in tort and

---

5. In *Brooks*, the plaintiff's suit was dismissed by the trial court on exceptions of prescription and no cause of action. The Court of Appeal reversed and remanded. What finally occurred after the Supreme Court denied writs is not reported.

hence are governed by the one-year prescription applicable to 'offenses or quasi offenses'" (citing Phelps and Scott v. Board of Supervisors of L. S. U., 336 F. 2d 557 (5th Cir., 1964)). It is of interest that the *Scott* case, supra, decided after *Brooks*, held that a medical malpractice suit sounded in tort for purposes of the requirement of legislative authorization to sue the sovereign (citing *Phelps*).

The next question which must be determined is what prescriptive period is applicable to the claim against the drug company defendant. In order to resolve this question it is necessary to analogize the instant case to those cases dealing with other instrumentalities or products intended for intimate bodily use. Among such products are soft drinks, cigarettes and the like. It now seems well established that such actions arising out of "implied warranty" of fitness for human consumption are to be treated as actions sounding in tort. See R. J. Reynolds Tobacco Co. v. Hudson, 314 F.2d 776 (5th Cir., 1963) and Lartigue v. R. J. Reynolds Tobacco Co., 317 F.2d 19 (5th Cir., 1963) and the cases cited therein. Logically speaking, it would appear that if cases wherein impurity or unwholesomeness of the product is alleged are treated as claims arising in tort, *a fortiori* does the instant claim sound in tort where the action is predicated upon failure to warn.[6]

■ Having concluded that the claim against Bristol Laboratories, Inc. lies in tort, it is an inescapable consequence that the prescriptive period of one year must be applied. See R. J. Reynolds Tobacco Co. v. Hudson, supra, and the cases cited therein.

■ The final inquiry is whether the one-year prescriptive period had elapsed prior to the institution of this suit on May 1, 1964. When the one-year period commenced to run is a question of fact. The rule for determining this factual issue is well expressed in Springer v. Aetna Casualty and Surety Co., supra, as follows: " * * * it is well settled in Louisiana that liberative prescription for tortious conduct by physicians does not begin to run until the patient discovers or reasonably should have discovered his injury."

■ Likewise in the case of R. J. Reynolds Tobacco Co. v. Hudson, supra, the Fifth Circuit Court of Appeals indicates that the rule is the same in products liability cases. Thus, as to both aspects of this suit, prescription would not begin to run until the plaintiff knew or, as a reasonable person, should have known that the product involved and/or the negligence of the physician caused the alleged injury.

■ Ordinarily, this is a question of fact, not susceptible of summary decision. However, in this case counsel have conceded that all the evidence available on the issue of when plaintiff knew or should have known that the alleged malpractice of the doctor and/or the alleged failure of Bristol to warn of the harmful propensities of Kantrex caused his deafness is in the record[7] as now constituted. Therefore, a review of this evi-

---

6. For determination of this motion for summary judgment, we have assumed that defendant Bristol Laboratories, Inc. breached a duty to warn as alleged by plaintiff. However, this assumption is not supported by any evidence in the record as it now stands. To the contrary, it would appear from the literature published by Bristol, which is attached to the deposition of Mrs. Charles J. Breaux, August 2, 1965, that this defendant had issued detailed warnings of the possibility of the very side effects which plaintiff unfortunately sustained. Presumably, these warnings were directed to prescrib-ing physicians rather than to the ultimate users of this prescription drug whose identity the manufacturer could not reasonably have been expected to ascertain. But since granting of this motion is predicated upon the expiration of the prescriptive period, it is accordingly unnecessary to determine the merits of the claim against Bristol and we make no such determination. Viewing this matter in a light most favorable to the plaintiff, being a tort action we have concluded that the suit against Bristol was filed after prescription had run.

7. See footnote 2.

dence provides a sufficient basis for determination of this question of fact.

■ Plaintiff's own testimony establishes that he knew he had suffered a hearing impairment in 1958 and his testimony further indicates that he knew Kantrex and his treatment by Dr. Goldman were causative factors.[8] Plaintiff's testimony, even if construed in such a manner as to be most favorable to him, clearly establishes that, if he did not know, he *should have known*, as a reasonable person, under the circumstances that there was a causal nexus between his deafness and his treatment by Dr. Goldman and/or the administration of the drug Kantrex. Likewise, the testimony of Mrs. Breaux clearly confirms the conclusion that plaintiff knew or should have known what caused his deafness in 1958 and certainly in 1959.[9]

It might be noted that the type of case which usually causes difficulty to finders of fact trying to ascertain when the applicable prescriptive period commenced to run involves circumstances wherein the causative factor operates over a long period of time or when the injury is one which develops gradually or manifests itself slowly.[10] Obviously, those circumstances do not obtain in the instant case.

Also of record and attached to the deposition of Mrs. Breaux are two letters, one from Dr. Goldman and one from Dr. N. Leon Hart.

The letter from Dr. Goldman is dated May 16, 1961, and is addressed to one of the members of the law firm representing plaintiff. In this three-page narrative letter Dr. Goldman carefully outlines the medical history of plaintiff with frequent references to treatments and dates. In this letter Dr. Goldman makes is clear that he, after consultation with another doctor, administered Kantrex to the plaintiff, and also recounts the attempts to restore plaintiff's hearing, including trying to flush the Kantrex from his system.

The letter from Dr. Hart is dated May 25, 1961, and is also addressed to a member of the law firm representing plaintiff. In this letter Dr. Hart simply states, "On May 17, 1961, Mr. Charles Breaux was examined by me and found to be totally deaf."

In answer to Interrogatory Number 13 propounded by Bristol Laboratories, Inc., plaintiff, on April 8, 1965, responded, "I have discussed various details of the accident at various times beginning in the year 1961 to the present with the above members of the firm of Mollere & Zaccaria."

Consistent with the plaintiff's response to this interrogatory are the contents of a letter addressed by plaintiff's counsel to Dr. Goldman, dated May 11, 1961, wherein Dr. Goldman is requested to forward to counsel a medical report concerning his treatment of plaintiff.[11] It was in response to this letter that Dr. Goldman prepared the narrative report previously referred to herein.

Therefore, in view of the information which was in the possession of plaintiff's attorneys in 1961,[12] there can be no doubt

---

8. Deposition of Charles J. Breaux, August 2, 1965, pp. 8, 9, and 12.

9. Deposition of Mrs. Charles J. Breaux, August 2, 1965, pp. 13–17.

10. See DeLaughter v. Borden Company, 364 F.2d 624 (5th Cir., 1966).

11. A copy of this letter was attached to, and filed into the record with, the motion of defendant Aetna Casualty and Surety Company for summary judgment on October 15, 1965. The attached letter is referred to in that motion as "Exhibit B." It is noteworthy that in Phelps v. Donaldson, 243 La. 1118, 150 So.2d 35, 37, the Court attaches significance to the fact

that Mrs. Phelps' attorney had corresponded with the defendant more than one year prior to institution of suit.

12. Clearly under a well-established principle of the law of agency, the knowledge of the agent is chargeable to the principal. See, e. g., Mayer v. Ford, 12 So.2d 618 (La.App., 1943). The knowledge of an attorney is imputable to his client. Link v. Wabash Railroad Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); Armstrong v. Ashley, 204 U.S. 272, 27 S.Ct. 270, 51 L.Ed. 482 (1907); Smith v. Ayer, 101 U.S. 320, 25 L.Ed. 955; Krumholz v. Goff, 315 F.2d 575, 583 (6th Cir., 1963); rehearing denied, 318 F.2d

that prescription began to run in 1961, if, indeed, it had not already begun in 1958 or 1959.

In any case, when suit was filed on May 1, 1964, plaintiff's alleged claims against both defendants had prescribed by the expiration of the one-year liberative prescription applicable to offenses and quasi-offenses.

Therefore, the motions for summary judgment filed by Aetna Casualty and Surety Company and Bristol Laboratories, Inc. must be, and the same are hereby, granted.

911; Central Bank and Trust Company v. Lee C. Nelson, Inc., 221 F.Supp. 721, 723 (D.C.Mont., 1963); Ingalls Iron Works Company v. Ingalls, 177 F.Supp. 151 (N.D.Ala., 1959), affirmed, 5 Cir., 280 F.2d 423; Land v. Acadian Production Corporation of La., 57 F.Supp. 338, 351 (W.D.La., 1944), reversed on other grounds, 5 Cir., 153 F.2d 151.